TERRITORY OF HAWAII, BY J. W. CALDWELL, SUPERINTENDENT OF PUBLIC WORKS, *v.* PACIFIC COAST CASUALTY COMPANY, A CORPORATION.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

HON. W. J. ROBINSON, JUDGE.

ARGUED JANUARY 7, 1915.     DECIDED FEBRUARY 1, 1915.

ROBERTSON, C.J., WATSON, J., AND CIRCUIT JUDGE ASHFORD, IN PLACE OF QUARLES, J., DISQUALIFIED.

PRINCIPAL AND SURETY—*contractor's bond—liability of surety.*

A surety on the bond of a contractor for a public work given to the Territory of Hawaii and conditioned that the contractor

Territory v. Pacific Coast Casualty Co., 22 Haw. 446.

shall deliver the said work to the Territory, fully completed, free from all liens and claims, is not liable at the suit of the Territory for materials furnished to the contractor and used in the completion of the work, where the work is not subject to lien and the claims of the material-men could not lawfully be asserted against the Territory.

SAME—*same—same.*

Under Act 31, Laws of 1913, the Territory of Hawaii cannot maintain an action in its own name upon the bond of a contractor for the recovery of the value of materials supplied to the contractor in the prosecution of the work.

SAME—*same—same.*

Where the bond is for the faithful performance of the contract and the contract provides that the contractor shall "furnish all material necessary to complete the work" but does not in express terms bind him to pay for the same, the surety is not liable for the payment for materials furnished the contractor.

### OPINION OF THE COURT BY WATSON, J.

On August 23, 1913, the Territory of Hawaii (defendant in error) and one F. M. Friesell entered into a contract by which Friesell agreed to lay a certain amount of six-inch galvanized iron water pipe near Kaimuki, city and county of Honolulu, for the sum of $5655. The contract, so far as material, provided that the contractor should furnish all material (except manhole frames) and all labor necessary for the completion of the work and complete the same in a workmanlike manner to the satisfaction of the superintendent of public works and in accordance with plans and specifications. The Territory agreed to pay eighty per cent. of the value of the materials used and work done during the preceding month as the work progressed. The remaining twenty per cent. was made payable upon the acceptance of the work by the superintendent of public works. To secure the faithful performance of the contract the contractor furnished a bond signed by the plaintiff in error, the Pacific Coast Casualty Company, as surety, which, so far as material, bound it unto the Territory of Hawaii and its successors in the sum of $1415, and provided that the condition of this obligation is such that

"Whereas, the above named principal (Friesell) has this day entered into an agreement with the above named Territory of Hawaii through J. W. Caldwell, its superintendent of public works, to furnish all the labor, material, equipment, tools and machinery necessary to complete the laying of 6″ galvanized iron water pipe at Kaimuki, Honolulu, Territory of Hawaii.

"Now, therefore, if the above named principal shall in all things well and truly keep, observe and perform the said agreement and each and every covenant, condition and promise therein contained on his part to be kept, observed or performed and shall promptly pay all just claims for all labor and materials furnished to him and used in the prosecution of the work, and shall deliver the said work to the said Territory of Hawaii or to its successors fully completed as in said agreement specified, free from all liens and claims and without further cost, expense or charge to the said Territory of Hawaii or to its successors in office than is agreed to or provided for in said agreement * * * then the above obligation shall be void, otherwise it shall be and remain in full force and virtue."

Before the work was completed Friesell abandoned the contract and the Territory completed the laying of the pipe. This contingency was provided for in the contract as follows:

"Should the contractor at any time fail to carry out the work as specified and as shown on the plans, the superintendent of public works may declare the contract terminated, so notify the contractor and thereupon enter said work, use all the tools, machinery and appliances, the property of the contractor, or such as may have been used by him, and complete the work, charging the cost of same against any moneys held in reserve or belonging to the contractor or that may be due for any work performed; and if such moneys are not sufficient to complete the work, the bondsmen shall be held liable for the excess of any moneys so expended above the contract price."

Presumably the cost of completing the work was charged against the contract and deducted from the money held in reserve belonging to the contractor, as, although it is alleged that Friesell did not complete the work and abandoned the contract when it was uncompleted and the Territory was compelled to complete the same, it is not made to appear that the Territory

sustained any damage thereby, nor is any claim made against the defendant therefor. Upon the completion of the work the Territory was indebted to Friesell in the sum of $1395.50, and Friesell was indebted to various material-men in the sum of $1682.88, claims for which against Friesell were filed in the office of the superintendent of public works. As to these claims and the amount remaining due Friesell under the contract it is stipulated in the agreed statement of facts as follows:

"That there has been paid upon the contract pursuant to its terms the sum of $4259.50 and that there still remains unpaid thereon the sum of $1395.50.

"That there have been filed claims against the defendant F. M. Friesell, contractor, in the sum of $1682.88, which said claims are hereby admitted by the Pacific Coast Casualty Company to be valid and copies of which are attached to plaintiff's complaint. The claims are for materials furnished the defendant Friesell and used by him to complete the contract."

This suit is brought on the bond, by the Territory of Hawaii, the obligor named in the bond, to recover $287.38, the amount due material-men in excess of the amount due from the Territory under the contract. No service was had upon the defendant Friesell and no appearance was entered by him in said action. The case was tried in the lower court, jury waived, upon an agreed statement of facts. The trial court found "that the bond upon which this suit is predicated is conditioned so that the principal 'shall deliver said work to the said Territory of Hawaii or its successors fully completed, as in said agreement specified, *free from all liens and claims and without further cost, expense or charge to the said Territory of Hawaii or to its successors in office than is agreed to or provided for by said agreement.'* The facts show that the contractor did not deliver the work to the Territory of Hawaii or to its successors fully completed, free from all liens and claims, but on the contrary there were claims to the amount of $287.38 in excess of the amount due upon the contract, and the court finds that the surety is liable upon its bond therefor." Judgment was accord-

ingly entered in favor of the plaintiff (Territory of Hawaii) to recover of the defendant, Pacific Coast Casualty Company (plaintiff in error here), the sum of $287.38 together with interest and costs of court, to reverse which the record has been removed to this court by a writ of error.

We cannot agree with the trial court that the plaintiff in error is liable on the stipulation contained in the bond signed by it as surety that the contractor shall "deliver the said work to the said Territory of Hawaii or to its successors fully completed, as in said agreement specified, free from all liens and claims," etc. It is conceded by the defendant in error that the pipe line is a public work; that the material-men were not entitled to liens and that their claims could not lawfully be asserted against the Territory. It is urged, however, by counsel for the Territory that the Territory is morally bound to pay the claims of the material-men for materials furnished the contractor and actually used in the work, and it is said that in a case similar to the one at bar the legislature of the Territory has recognized such moral obligation by making appropriations out of the public funds to pay material-men for materials furnished to a contractor and used by him in the construction of a public building—the contractor having failed to pay for the same. With such considerations the courts have no concern. There is no principle of law better settled than that a surety has the right to stand upon the very terms of his contract. And the liability of the plaintiff in error in this case can in no wise be affected by the fact, or conjecture, that the legislature *may,* in a spirit of mistaken generosity, or whatever its motive may be, take the view that the Territory is morally obligated to pay these claims and make an appropriation therefor. Suffice it here to say that such claims are not enforceable either at law or in equity against the Territory. Not only is this the general rule of law with respect to the enforceability of material-men's claims against public contracts, but in the instant case the contract expressly provides that "the Territory will not be respon-

sible for any * * * material furnished except on written order of the superintendent of public works." The claims of the material-men which have been filed in the office of the superintendent of public works, and copies of which are attached to plaintiff's declaration, are all made out against F. M. Friesell, the contractor, and none of them, so far as the record discloses, have been asserted, nor has it been attempted to assert the same, against the Territory, or against the work. It is well settled, on principle and authority, that sureties on bonds to secure against liens or claims on property are not liable thereon unless liens or claims are made against it. *Smith* v. *Bowman* (Utah), 88 Pac. 687, 9 L. R. A. N. S. 889, and numerous authorities cited in case note 9 L. R. A. N. S. 889. In *Alcatraz Masonic Hall Assn.* v. *U. S. Fidelity & Guaranty Co.* (Cal.), 85 Pac. 156, 158, the court said: "The contract with the plaintiff on the part of Grant (the contractor) to deliver the building free from all liens, claims and demands is to be construed as limited to such liens and demands as can be enforced against the building * * * and the obligation of the defendant as surety for Grant has the same limitation. Unless the plaintiff has been compelled to pay a greater sum of money to free the building from the liens than the unpaid amount of the contract price for its construction it has suffered no damage." The Territory under this stipulation in the bond has no claim against the surety, because it has suffered no loss and has sustained no injury by reason of the failure of the contractor to pay the claims of the material-men. *Elec. Appliance Co.* v. *U. S. Fidelity & Guaranty Co.* (Wis.), 53 L. R. A. 609, 612. We will proceed to examine the other stipulations in the bond, and ascertain whether the plaintiff in error may be held liable thereunder in this action. The statute under which the bond in this case was executed (Act 31, Session Laws, 1913), entitled "An Act for the Protection of Persons Furnishing Materials and Labor for the Construction of Public Works," provides that the bond contemplated by it, to be given by the contractor, shall be condi-

tioned for the due and faithful performance of the contract
and also for the prompt payment to all others for all labor and
materials furnished by them to him and used in the prosecution
of the work provided for in such contract. The condition of the
bond given is substantially that required by the statute. The
fact that the bond contains a further undertaking that the con-
tractor shall deliver the said work to the said Territory of Ha-
waii or to its successors fully completed as in said agreement
specified, free from all liens and claims, etc., does not take the
bond out of the statute. *Board of Education* v. *Grant,* 107
Mich. 151, 154.

It will be seen by reading the two statutes that Act 31 afore-
said, so far as material, is copied almost verbatim from the
Act of Congress of August 13, 1894 (28 Stat. 278), as amended
February 24, 1905 (33 Stat. 811). The federal enactment
has been frequently before the courts (See 6 Fed. Stat. Ann.
pp. 125, et seq.), and in the case of *United States to Use of Ed-
ward Hines Lumber Co.,* v. *Henderlong, et al.,* 102 Fed. 2, an
action brought by a material-man against a contractor and the
sureties on his bond to recover the value of certain materials
furnished the contractor and used by him in the construction of
a postoffice building for the United States, the court said (p. 4):
"The right of action created by the bond in favor of laborers
and material men is exclusively vested in them by the statute.
They alone are authorized to bring the suit and to prosecute
the same to final judgment and execution. The United States
have no interest, either directly or indirectly, in the contro-
versy. * * * *The United States, as sole plaintiffs, could not
maintain a suit in their own name upon the bond for the recov-
ery of the value of labor or materials supplied to the contractor
in the prosecution of the work.*" Again, in the case of *United
States* v. *National Surety Co.,* reported in 92 Fed. 549, the
circuit court of appeals for the eighth circuit, speaking through
Circuit Judge Thayer, said (p. 551): "The Act of Congress
of August 13, 1894, does not authorize the United States to

bring suits of its own motion against the obligors in such bonds as are therein provided for, to recover what is due to laborers and material-men. It is not empowered to act in their behalf in that respect, but such actions can only be brought at the instance of persons who furnish labor and materials, who are authorized, without previous leave being obtained from any executive department, to sue in the name of the United States, and control the litigation precisely as they might control it if the suits were brought in their own name. * * * The bond which is provided for by the act was intended to perform a double function,—in the first place, to secure to the government * * * the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained materials or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains, the one for the benefit of the government and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience." See also *City of Bethany* v. *Howard,* 149 Mo. 504. Where the terms of a statute which has received judicial construction are used in a later statute, whether passed by the legislature of the same state or country or by that of another, that construction is to be given to the later statute. *Commonwealth* v. *Hartnett,* 3 Gray 450; *Bogardus* v. *Trinity Church,* 4 Sandf. Ch. 633; *Rigg* v. *Wilton,* 13 Ill. 15; *Adams* v. *Field,* 21 Vt. 256. It is to be presumed in such case that the legislature which passed the later statute knew the judicial construction which had been placed on the former one and such construction becomes a part of the law. Potter's Dwarris Stat., 274.

There remains but one other condition in the bond to be considered,—the first,—which is for the faithful performance of the contract. As we have seen, the contract provides that the contractor shall furnish all material and labor necessary to complete the work. But as it does not in express terms bind him to pay for the materials that provision of the bond does not cover the amounts due material-men and would not authorize the Territory to sue upon the bond to recover such amounts or any part thereof. *Wolf* v. *City of Sterling*, 61 Ill. App. 515, 521, affirmed on appeal, 163 Ill. 467; *Puget Sound Brick Co.* v. *School District* (Wash.), 40 Pac. 608; *Searles* v. *City of Flora*, 225 Ill. 167, 171. We are of the opinion that under the pleadings and evidence in this case no breach of the bond has been shown which would entitle the Territory (defendant in error herein) to recover in this action.

In view of our conclusion that the Territory has no right to maintain this action we do not find it necessary to discuss the application of the doctrine of *strictissini juris* as applied to compensated sureties on a bond, or whether the surety in this case was released from all liability under the bond by reason of certain alleged alterations in the work and extensions of time granted the contractor without notice to or the consent of the surety.

It results from what has been said that the judgment of the circuit court was erroneous and should be reversed. It is so ordered, and judgment will be entered in this court for the plaintiff in error (defendant below).

*R. J. O'Brien* (*E. C. Peters* with him on the brief) for plaintiff in error.

*L. P. Scott, Deputy Attorney General* (*I. M. Stainback, Attorney General,* with him on the brief), for the Territory.