MELLIE E. HUSTACE *v.* J. R. DAVIS AND JAMES BICKNELL, DEFENDANTS, AND JAMES BICKNELL, AUDITOR OF THE CITY AND COUNTY OF HONOLULU, GARNISHEE.

## No. 957.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

HON. T. B. STUART, JUDGE.

ARGUED FEBRUARY 13, 1917.                DECIDED FEBRUARY 27, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

PRINCIPAL AND SURETY—*building contracts—changes in plans.*

Where a building contract provides that the owner shall have the right to order changes to be made in the work a surety on the bond of the contractor is deemed to have assented in advance to the making of changes, and he will not be released from liability unless the changes made were of such a character as could not reasonably be supposed to have been within the contemplation of the parties at the time the contract was entered into.

SAME—*written order for changes.*

Where a building contract contemplated the making of changes in the work and provided that the making of changes should not affect the validity of the contract, and provided also that no changes should be made except upon the written order of the architect, held that where certain changes were made pursuant to the requirement of the owner and upon the verbal order of the architect, the surety on the bond was not released by reason of the fact that the architect's order was not made in writing.

SAME—*extension of time for performance.*

Where a building contract contemplated an extension of the time for performance for a period equivalent to any delay that might be caused by the owner if written claim for such extension should be presented within forty-eight hours of the occurrence, held that where delay had been caused by orders for changes in the work and the architect allowed a definite extension of time, the surety

on the bond was not released from liability by reason of the failure
of the contractor to make written application for an extension.

SAME—*deviations from terms of contract in method of procedure or
performance.*

Departure from the terms of a building contract in the method
of procedure or performance in the manner of carrying out the
contract, as in the matter of making payments, will not release the
surety on the bond unless the deviations tended to prejudice his
rights.

TRIAL — *instructions.*

It is reversible error to refuse to give a requested instruction
which is accurate, applicable and material to an issue involved in
the case where the charge given to the jury does not cover the
point.

OPINION OF THE COURT BY ROBERTSON, C.J.

This is an action against the principal and surety on a
builder's bond, in which there was a verdict for the plaintiff
against the principal but in favor of the surety. The
plaintiff brings exceptions.

There was evidence to the effect that on October 24, 1910,
Mrs. Hustace made a contract with Davis for the furnishing
of the materials and labor for and the erection on her prem-
ises at Waikiki, Honolulu, of a two-story residence, accord-
ing to plans and specifications, for the sum of $7116; that
the contractor gave a bond in the sum of $3558, with the
defendant Bicknell as surety, conditioned for the perform-
ance on his part of the covenants, conditions and agree-
ments contained in the contract, and that he would pay
for all material used and labor employed in the performance
of the contract and save Mrs. Hustace harmless from all
liens, suits, damage, etc. In this action the plaintiff claimed
the sum of $1952.48, which was made up as follows: Davis
was credited with the sum called for by the contract, $7116;
extras accruing from changes ordered by Mrs. Hustace,
$456.74; and an extra charge allowed for a concrete floor not

required by the plans, $325. And the contractor was charged with two cash payments made to him amounting to $4500; cash paid to material-men, $2966.41; payments on judgments and to settle other liens filed by material-men, $1588.64; costs in lien cases, $237.95; deductions made by the architect, including penalty for failure to complete the work in time (27 days, at $15, $405), $517.88; and an item designated "premium on policy," $39.34, as to which we find no evidence in the record. The verdict of the jury was against Davis for the sum of $1435.76, which would seem to have been arrived at by deducting from the amount claimed by the plaintiff the sum of $516.72, which was the amount paid to discharge one of the judgment liens. The plaintiff's exceptions are to certain rulings made by the court below on the admission of evidence, to the instructions given or refused, to the verdict, and to the overruling of a motion for a new trial.

Counsel for the defendant Bicknell contends that upon the evidence the surety on the bond was released from liability and that a motion for a directed verdict in favor of the surety, which was made when both parties had closed their evidence, ought to have been granted, and that, if so, any errors that may have occurred in the instructions given the jury were harmless and need not be discussed. The several grounds on which the motion for the directed verdict in favor of the surety was based will be considered in connection with the evidence bearing thereon. The first ground was as follows: "That the owner without the consent of the surety and in the absence of a written order of the architect therefor, altered the building contract of October 24, 1910, by ordering and causing to be performed certain substantial extras upon the building subject to the contract, contrary to the provisions of Article 3 of said building contract." Article 3 of the contract provided that "No altera-

tions shall be made in the work except upon written order of the architect," and a paragraph in the specifications, which were made part of the contract, provided that "The owner shall have power to require alterations in the work shown or described in the drawings or specifications, and the contractor shall proceed to make such changes without causing delay. In every such case, the price agreed to be paid for the work under the contract shall be increased or decreased, as the case may require, according to a fair and reasonable valuation of the work added or omitted, and the value of such work shall be fixed by fair admeasurement and valuation, made by the architect, or by some competent person appointed by him. Such alteration or variations shall in no way render void the contract, and no claim for variations or alterations, or the increased or decreased price thereof, shall be valid, unless done in pursuance of an order from the architect, and notice of such claim made to him in writing before the commencement of such work." The evidence shows that the owner required certain changes to be made in the work which called for the alteration of partitions, additional doors, wood work, hardware and labor for which the contractor rendered a bill for $714.70 and the architect allowed $456.74. The architect testified that he had given an order for this extra work orally, but not in writing. Although there are cases holding the contrary, we believe the sound rule to be that the reducing of a verbal order for changes in the work to writing is an immaterial formality so far as the surety on the bond is concerned and that the lack of a written order will not release him from liability. *Hohn* v. *Shideler,* 164 Ind. 242; *Hinton* v. *Stanton,* 165 S. W. (Ark.) 299; *Bartlett* v. *Illinois Surety Co.,* 142 Ia. 538, 553. It is also contended that the changes ordered and made were material alterations in the plans which, as matter of law, released the surety. It is argued that sureties are favorites of the law and a contract of suretyship must be strictly

construed to impose upon the surety only those burdens clearly within its terms and must not be extended by implication or presumption. In the case of *Territory* v. *Pacific Coast Casualty Co.,* 22 Haw. 446, 450, this court said, "There is no principle of law better settled than that a surety has the right to stand upon the very terms of his contract." But here, one of the "very terms" to which the surety had assented was that the owner could require alterations in the work and that the contractor should make them. In a case such as this the surety is not released by the making of material changes but by such only as cannot reasonably be said to have been within the contemplation of the parties when the contract was entered into. It is well settled that where a building contract provides that the owner shall have the right to order changes to be made in the work the sureties for the contractor are deemed to assent in advance to the making of the alterations, and if they are made, although they may be material, the sureties are not released thereby. *United States* v. *Freel,* 92 Fed. 299, 99 Fed. 237, 186 U. S. 309; *McMullen* v. *United States,* 167 Fed. 460, 222 U. S. 460; *People's Lumber Co.* v. *Gillard,* 136 Cal. 55, 61; *Fidelity etc. Co.* v. *Robertson,* 34 So. (Ala.) 933; *Smith* v. *Molleson,* 148 N. Y. 241; *Hohn* v. *Shideler, supra.* The circumstances may be such in a particular case that the court would hold as matter of law that the alterations were of such a radical character that they could not be supposed to have been within the contemplation of the parties, or, on the other hand, of such a reasonable and ordinary description that the court could say that they must have been contemplated. Between those two propositions there is a middle ground where the circumstances might be such that reasonable men's conclusions may differ, and in such cases the question should be left to the jury under proper instructions. See *Bartlett* v. *Illinois Surety Co.,* and *Hinton* v. *Stanton, supra.* In the case at bar it cannot be said that the

alterations were such that, as matter of law, they effected the release of the surety, and the contention of counsel for the appellant goes no further than that the question should have been submitted to the jury. It appears that the item of $325 for a concrete floor allowed as an extra and credited to the contractor in the plaintiff's account was not work done under the contract but outside of the building in question and pursuant to an independent agreement between Mrs. Hustace and Davis. It should have no place in this case. In this connection counsel for Bicknell contends that the charge made for material for cement work ($436.19) was an improper one. There was, apparently, some cement work done under the contract, but unless the plaintiff be able to segregate the charge for such material as was used under the contract from that connected with the independent agreement she should not recover in this case for any part of it. The next ground of the motion was, "That the owner without the consent of the surety extended said contract beyond the ninety working days allowed under the provisions of Article 6 of the building contract." The contract obliged the contractor to complete the work within ninety days of its date. But there was a further provision to the effect that should the contractor be delayed in the prosecution of the work by the act of the owner the time for the completion could be extended for a period equivalent to the extent of the delay which was to be determined by the architect, "but no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of the delay." There was evidence to the effect that because of the alterations ordered by the owner the architect had extended the time for the completion of the work for fifteen days. This, of course, was within the provisions of the contract. It was not shown that the contractor made a written claim for an extension within forty-eight hours as provided in the con-

tract, but the omission was that of the contractor and of no one else. The surety would not be discharged by the mere neglect of his principal to file a claim in writing. Other grounds of the motion were that the architect neglected to issue monthly certificates certifying the approximate value of the work performed; that the owner made payments to the contractor without certificates of the architect; and that the owner failed to make monthly payments on account of the contract on certificates of the architect, all contrary to the provisions of Article 9 of the contract. The 9th article provided that payments should be made monthly and only upon certificates issued by the architect as to the approximate value of the work performed, twenty per cent. of the amount to be retained by the owner until formal acceptance of the building by the architect within thirty days after its completion. It was not shown when the work was commenced, but the two certificates of the architect upon which payments were made to the contractor were dated respectively December 5, 1910, and January 14, 1911. The certificates did not show upon their face that twenty per cent. of the value of the work done was deducted, but the architect testified that such was the fact and that the amounts specified in the orders were the net amounts due the contractor. No other sums were paid to the contractor. In this class of cases the courts have properly drawn a distinction between changes in the contract or in the work to be performed, and a departure from the terms of the contract relating to the method of procedure or performance in the manner of carrying out the contract. As to the latter, deviations will not result in the release of the surety unless they tend to prejudice his rights. *Martin* v. *Whites,* 128 Mo. App. 117, 122; *Monro* v. *Nat. Surety Co.,* 92 Pac. (Wash.) 280; *Smith* v. *Molleson, supra.* An immaterial deviation from the terms of the contract in the matter of making payments will not release the surety on the bond. *New Haven*

v. *Nat. Steam Economizer Co.*, 79 Conn. 482, 489. We think the principle is applicable here. The contractor was not paid more than was due him, and the fact that the certificates were not issued and the payments made on the exact monthly dates in no way, so far as appears, tended to injure or prejudice the surety. Further grounds of the motion were that the owner made payments to material-men; and failed to retain twenty per cent. of the contract price and extras until the formal acceptance of the building by the architect as required by the provisions of the contract. It is not clear from the testimony just what happened after the second payment had been made to the contractor. There was some indefinite testimony tending to show that a third certificate was issued by the architect and that the owner refused to make payment upon it. On March 25, 1911, the contractor gave an order on the owner in favor of a material-man for $2377.78 and it was honored. It appears that another material-man was paid $152.44 with the contractor's consent or upon his order. Several liens were filed. The owner occupied the building on April 1, but the contractor had exceeded his time limit and the architect refused to accept the building. As above shown, the payments which the owner was obliged to make exceeded the amount due and payable under the contract. We see nothing in these circumstances which could properly be held to constitute a discharge of the surety. Whatever complications had arisen appear to have been caused by the defaults of the contractor. We hold, therefore, that the motion of the surety for a directed verdict in his favor was properly refused.

The trial court declined to give all but one of the instructions requested by the plaintiff and charged the jury of its own motion. The plaintiff excepted generally to "the court's giving of its instructions—his written instructions." Such a general exception could be sustained only in the event that the instructions were bad throughout. *Territory*

v. *Lau Chong,* 20 Haw. 235; *Territory* v. *Peter,* 22 Haw. 132. Here, though there were evident errors, it cannot be said that the charge as given was entirely bad.

In his brief counsel for the appellant contends that plaintiff's requested instructions Nos. 7, 8, 9 and 10 were erroneously refused. By number 7 the court was asked to instruct the jury that the judgments rendered in the lien cases of *Lewers & Cooke, Ltd.,* and *Lucas Bros.* are conclusive upon the defendants in this case. An inspection of the records in those cases which were put in evidence shows that the plaintiffs claimed the value of materials furnished for the construction of a building by Davis upon the premises of Mrs. Hustace, but it did not appear upon the face of either record that the building for which the materials were furnished was the one which was erected under the contract of October 24, 1910. There was evidence in this case from which the jury were authorized to find as a fact that those materials were used in the construction of the building under this contract. But the instruction went too far in saying that the judgments were "conclusive"—which we take to mean conclusive as matter of law—since it was necessary to supplement the records with evidence identifying the contract referred to in them with the contract for the performance of which the defendant Bicknell was surety. The instruction in the form requested was properly refused. By numbers 8, 9 and 10 the court was requested to instruct the jury that "you may include in your verdict" the cash payments made to the contractor, the amounts paid to material-men upon the orders of the contractor, and the amount of the costs and expenses incurred by the plaintiff in connection with the lien cases. The requested instructions were defective and properly refused. The sum of the different amounts referred to in the instructions was many times the amount claimed in the action. Probably what was meant to be stated was that in ascertaining the balance due

the plaintiff the jury should take into consideration the several matters mentioned, but if so, the intent was not expressed.

There was, however, one instruction requested by the plaintiff, bearing upon the liability of the surety, which contained a correct statement and which ought to have been given to the jury. It was as follows:

"5. I charge you that the provision in the contract that no alterations shall be made in the work except by written order of the architect does not preclude the making of alterations without such written order, that provision being principally for the protection of the owner against the claim of the contractor that alterations were made with the owner's consent, when in fact such consent was not obtained, and alterations so made with the consent and approval of the owner and architect will be held to be done under the contract."

That instruction was accurate, applicable and material to the point it referred to and was not included in the charge given by the court. The refusal to give it constituted error. *Nawelo* v. *von Hamm-Young Co.*, 20 Haw. 644.

The exceptions to the refusal to give plaintiff's requested instruction number 5, and those to the verdict and the ruling denying the motion for a new trial are sustained, and a new trial is granted.

*C. S. Davis* for plaintiff.

*E. C. Peters* for defendant Bicknell.