IN THE MATTER OF THE CLAIM FOR COMPENSATION OF FRANCISCO TOMONDONG *v.* M. IKEZAKI.

No. 2048.

Argued March 18, 1932.                    Decided April 2, 1932.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY BANKS, J.

The instant proceeding was originally begun before the industrial accident board and was brought under the provisions of the Workmen's Compensation Act (Ch. 209, R. L. 1925). The board awarded compensation against the defendant and in favor of claimant as follows: " * * * the costs of medical, surgical and hospital services and supplies, as provided under chapter 209, Revised Laws of Hawaii 1925, and for and during a period of his said total and permanent disability, commencing with January 27th, 1930, the eighth day of the said disability, a weekly compensation of sixty per centum (60%) of his average weekly wage for and during a period not to exceed three hundred twelve (312) weeks; provided, further, that the amount of compensation to be paid under this award shall not exceed in the aggregate the sum of five thousand dollars ($5,000.00). * * * The board further finds the average weekly wage * * * to be fourteen dollars and forty-two cents ($14.42), and sixty per centum (60%) of the said average weekly wage to be eight dollars and sixty-five cents ($8.65)—or if paid in monthly install-ments to be thirty-seven dollars and forty-eight cents

($37.48)." The defendant appealed from this award to the circuit court, where the case was again tried with the result that the award of the board was affirmed. The defendant brings the case here on exceptions.

At the trial before the circuit court it was stipulated by the parties that the case should be heard and determined on the evidence taken before the industrial accident board, which was accordingly done.

The uncontradicted evidence shows that on January 20, 1930, the claimant, while engaged in clearing a plot of ground in the Bingham Park Tract of rock and leveling the same, was seriously injured by a premature explosion of dynamite. As a result of his injuries he lost the sight of both eyes and a part of one arm.

The following are also undisputed facts. One Ikezaki, a general contractor engaged in business in Honolulu, had a contract with the Liberty Investment Company, the owner of the land, for the construction thereon of a house. This contract included the preparation of the ground for that purpose. The claimant and one Shimabuku were doing this preparatory work under some arrangement with Ikezaki. Ikezaki was to pay for this work the fixed sum of sixty dollars.

Other than the price to be paid for the work there is a sharp dispute between the parties, it being contended on the one hand by the defendant that under the evidence the claimant was an independent contractor, while on the other hand it is contended by the claimant that under the terms of the Workmen's Compensation Act he was an employee of Ikezaki.

The case of *Ikoma* v. *Oahu Sugar Co.*, 23 Haw. 291, upon which the circuit judge based his conclusion that the defendant was liable, was a case in which an independent contractor who was engaged in constructing a roadbed on the property of the Oahu Sugar Company

employed one Ikoma to assist in the work. In construing the Workmen's Compensation Act this court held under the facts before it that the Oahu Sugar Company was the owner of the land and the owner and operator of the business being carried on and was therefore liable for the injuries sustained by Ikoma. In applying that case to the case at bar and in basing his decision on it, as he very clearly did, the circuit judge must have reached the conclusion that the business that was being carried on upon the premises where the claimant was at work at the time of his injuries was that of preparing the ground for the erection of a house which Ikezaki had contracted to erect for the Liberty Investment Company, the owner of the property. He must also have reached the conclusion that Ikezaki was virtually the owner and operator of this business and that Shimabuku in undertaking to prepare the ground on behalf of Ikezaki had done so as an independent contractor. He must have reached the further conclusion that the claimant was Shimabuku's employee. That the above conclusions were reached by the circuit judge seems evident from the portion of his decision in which he says: "Under this situation as to the facts and evidence in this case it appears, and I so find, that claimant was a workman employed by defendant and said defendant was an employer of claimant within the provision of our workmen's compensation law as interpreted by our supreme court in *Re Ichijiro Ikoma,* 23 Haw. 291. No attempt has been made to distinguish this case from the case at bar and it seems to be clearly in point and decisive of this case. The fact that claimant was to be paid out of a lump sum in lieu of wages does not take his case out of the operation of our workmen's compensation law any more than the fact that he was hired or employed indirectly through a contractor or sub-contractor prevents him from being a workman employed

in an industrial employment within the said law. The liberal construction given by our supreme court to our workmen's compensation law in the *Ikoma* case, *supra,* as well as in the cases of *Silva* v. *Kaiwiki Mill Co.,* 24 Haw. 324; *Ching Hon Yet* v. *See Sang Co.,* 24 Haw. 731, 739, and *Wong Chee* v. *Yee Wo Chan,* 26 Haw. 785, 795, is too well established to be further questioned. The re-enactment by our legislature of our workmen's compensation law with the construction placed thereon by our supreme court in the *Ikoma* case, *supra,* is conclusive and binding and makes said construction a part of the workmen's compensation law itself, especially in view of the fact that no amendments were made by the legislature to take the employee of a subcontractor out of the operation of said workmen's compensation law in so far as the principal contractor is concerned. See *Territory* v. *Pacific Coast Casualty Company,* 22 Haw. 446, 453. The *Ikoma* case, *supra,* clearly holds that an injured workman whether employed directly by the owner or operator of a business or indirectly through a contractor is entitled to compensation as against the owner or operator of said business." Without these conclusions of fact the *Ikoma* case was entirely inapplicable. We think all the conclusions that were reached by the circuit judge, except the last one, are amply supported by the evidence and were therefore correctly reached. It is manifest that the only business that was being carried on upon the premises at the time of claimant's injuries was that of preparing a piece of unoccupied ground for the erection of a house thereon. It is also manifest that the sole owner and operator of this business was Ikezaki. And it is clearly shown by the evidence that Shimabuku's relation to Ikezaki was that of an independent contractor.

Speaking on the subject of what constitutes an independent contractor, it is said in 28 R. C. L. 762: "In

a great many cases the question has been presented as to whether a claimant under the statute was at the time of the calamity acting as the workman or employee of the employer, or whether he was engaged as an independent contractor. The distinction between the relationships has long been recognized by the law, and a rule of definition has met with general acceptance. One who contracts with another to do a specific piece of work for him, and who furnishes and has the absolute control of his assistants, and who executes the work entirely in accord with his own ideas, or with a plan previously given him by the person for whom the work is done, without being subject to the latter's orders in respect of the details of the work, with absolute control thereof, is not a servant of his employer, but is an independent contractor. This is the common law definition, and it embodies the rule applicable under the statutes, inasmuch as the acts do not attempt any definition. The test is to be found in the fact that the employer has or has not retained power of control or superintendence of the contractor or employee."

In *Fidelity & Casualty Co.* v. *Industrial Accident Commission*, 191 Cal. 404, 216 Pac. 578, 579, the court said: "In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion and other circumstances persuasive to the opposite conclusion. But an analysis of the cases makes it plain that the determinative factor is usually found in the solution of the question: Who has the power of control, not as to the result of the work only, but as to the means and method by which such result is accomplished? In Luckie v. Diamond Coal Co., 41 Cal. App. at page 480, 183 Pac. at page 183, after an extensive review of the cases, the court said: 'The

accepted doctrine is that, where the essential object of the employment is the performance of work, the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the job shall be done; or, in other words, not only what shall be done, but how it shall be done. Labatt on Master and Servant, § 64; Western Indemnity Co. v. Pillsbury, 172 Cal. 807, 159 Pac. 721. "The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for." Green v. Soule, 145 Cal. 96, 99, 78 Pac. 337, 339. He is deemed to be the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details. The legal test for the determination of the question is stated by Thompson as follows: "An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." * * * 1 Thompson on Negligence, §§. 621, 622.' See, also, Barton v. Studebaker Corp., 46 Cal. App. 707, 717, 189 Pac. 1025, and cases there cited; Flickenger v. Industrial Acc. Comm., supra; Pryor v. Industrial Acc. Comm., 186 Cal. 169, 198 Pac. 1045."

In *Kinsman* v. *Hartford Courant Co.,* 108 Atl. (Conn.) 562, 563, the court said: "One is an employe of another when he renders service for him and what he agrees to do or is directed to do is subject to the will of that other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. If one carries on work for another, and in mode, manner, and means is independent of that other's control, he is an

independent contractor."

In *Beach* v. *Velzy*, 238 N. Y. 100, 143 N. E. 805, 806, the court said: "The independent contractor is one who agrees to do a specific piece of work for another for a lump sum or its equivalent who has control of himself and his helpers, as to when, within a reasonable time, he shall begin and finish the work, as to the method, means or procedure of accomplishing it, and who is not subject to discharge because he does the work as to method and detail in one way rather than another. In the relation of employer and employee the employer has control and direction not only of the work as to its result, but as to the details and method of doing the work, and may discharge the employee for disobeying such control and direction. Measured by these tests the evidence does not justify the finding of the commission that claimant was engaged as an employee of appellant within the meaning of the Workmen's Compensation Law."

Under the law as stated in the above citations the real test of whether one is an independent contractor is whether the person in whose behalf the work is done has the power, express or implied, to dictate the means and methods by which the work is to be accomplished. If he has not this power but it is left to the person doing the work to choose such means and methods as he deems suited to the accomplishment of the work then such person is an independent contractor.

With this rule in mind let us examine the testimony bearing on this phase of the case. Tomondong, the claimant, testified that he was informed by Shimabuku that this was to be a contract job and that the proceeds thereof, namely, sixty dollars, would be divided equally between them. He further testified that all the tools which he and Shimabuku used on jobs such as this were their joint property and that the dynamite purchased for

use on this particular job had been bought with their joint funds. He related the facts pertaining to Ikezaki's supervision over the work, in substance, as follows: Ikezaki came to the scene of this particular job on three occasions before Tomondong's injury occurred and during such visits gave directions to Shimabuku in Japanese, who thereupon conveyed them to Tomondong in pidgin English. Ikezaki spoke to Tomondong in the course of the work but did not refer to the manner in which it was to be done. The periods during which Ikezaki remained on the job varied from one-half hour to one hour. Shimabuku's testimony corroborated that of Tomondong with reference to the arrangement for dividing the proceeds of the work between themselves and also with reference to their joint ownership of the tools and dynamite. He likewise testified that this job was a contract job secured from Ikezaki. He further stated that both he and Tomondong looked the work over before agreeing to undertake it. Tomondong's injury occurred on the third day after commencement of the work. As to the relations between himself and Tomondong and Ikezaki the substance of his testimony is as follows: Ikezaki came around to this particular job twice. He issued orders to place rock in the hollow places on the plot of ground. As to whether this instruction was included in Ikezaki's original directions at the time Shimabuku agreed to undertake the work Shimabuku's mind appears to be in some confusion. He testified as follows: "Mr. Lightfoot: Q On this Beretania Street job, did he give you any orders? A Yes. Q What orders did he give you? A He said there was a lot of rock yet, so put the rock in the hollow places to make it level. Q Isn't that what he told you before he gave you the bid for the job? A No, that was after we started. Q Wasn't that the original agreement, that you were to do that work? A Yes, that was also the original

understanding, that we were to do a good job. Q That you were to take rock and put it in the hollow places? A Yes. Q Did Ikezaki at any time go on the job and tell you to do more work than you had agreed to do in the original contract? A No. Mr. McIntyre: Q Did Ikezaki come around sometimes and tell you just what to do? A No. Q Didn't you say that he came around on this job after the work was started and told you to use some of the rocks to fill the hollows? A Well, that is the same thing he told me before we started the work. Q And he came around later and told you again? A Yes, after we started work also. Q He came around and said, 'Put some rock in here, and some more in here.' Is that the way he did it? A That was agreed upon in the beginning before the work started. Q No, but did he come around and tell you, 'Here is a hollow place, better get that filled up,' and 'Here's another hollow,' or 'Put a little more rock in this hollow and a little more in that hollow?' Would he give orders like that? A Yes, he said something like that once. Q Once? A Yes. Q After the work started? A This was after the work was started." When Ikezaki was asked how many sub-contracts he had let on the contract he had with the Liberty Investment Company to construct a house on the lot that was being cleared when the claimant was injured, he testified: "So far the work that has been let is the levelling of the lot to Shimabuku and there is other work that is to be done yet, like painting and electrical work that will be let later on." The evidence on the subject of the terms of the contract between Shimabuku and Ikezaki with reference to Ikezaki's right to control the manner and methods of doing the work is very scant. There is nothing, however, in the evidence of Shimabuku, that of the claimant or that of Ikezaki tending to show that Ikezaki in his arrangement with Shimabuku, with whom

he seems to have dealt, reserved in himself any power to control the means by which the work was to be done. On the contrary, according to the testimony of Shimabuku and that of the claimant, as well as that of Ikezaki, it was a "contract job," Shimabuku and the claimant using their own tools and devoting such time as they chose to the undertaking. It is true that both the claimant and Shimabuku testified that Ikezaki came to the scene of their work during its progress—the claimant that he was there three times and Shimabuku that he came there twice and that on one occasion he directed that the remaining rock be placed in the hollow places to make the ground level. This, however, is in no way inconsistent with our conclusion that Shimabuku was an independent contractor because it appears from Shimabuku's further testimony, above quoted, that the direction regarding the placing of the rock in the hollow places was a part of the original understanding between Ikezaki and Shimabuku at the time the contract was let to the latter.

The circuit judge in his decision also said: "In the case at bar Shimabuku was a workman employed directly by the defendant Ikezaki and could have recovered compensation if he had been injured in the scope and course of his employment as against Ikezaki. The only difference between Shimabuku and claimant is that claimant was employed not directly by Ikezaki but indirectly through Shimabuku and to deny either Shimabuku or claimant compensation under the workmen's compensation law would be to defeat the whole intent and purpose of the same as pointed out in the *Ikoma* case, *supra*." This statement seems inconsistent with the theory upon which the judge thought the defendant liable under the *Ikoma* case. Moreover, if it was the intention of the judge to say that Shimabuku was the employee of Ikezaki this finding is entirely unsupported by the evidence, as we

have just seen.

We come now to the question of whether the claimant was an employee of Shimabuku. As we have already seen, the circuit judge in thinking that the *Ikoma* case was decisive of the instant case must have reached the conclusion that it was. We think this was error. The evidence is undisputed that it was agreed between these two men that they were to work on this job together; that the tools to be used by them in the course of the work were their joint property; that the dynamite purchased by Shimabuku to be used on this particular job was bought with their joint funds, and finally that the two were to divide equally the proceeds of the work, namely, the sum of sixty dollars agreed upon between Shimabuku and Ikezaki. All the elements of a partnership, as set forth by this court in *Black* v. *Lord*, 29 Haw. 204, were present. This was recognized by the circuit judge in his decision when he said: "From the record and testimony before the industrial accident board it appears that the claimant together with one Shimabuku were partners or joint operators." Bearing this fact in mind we cannot sustain the finding of the circuit judge that the claimant was an employee of Shimabuku. As partners these two men occupied the same legal status. They were both either independent contractors or employees of Ikezaki. The evidence being conclusive that the partnership arrangement existed and the circuit judge's finding that Shimabuku was an independent contractor being fully supported by the evidence, it follows logically that both the claimant and Shimabuku were independent contractors.

Under these circumstances we think the decision of the circuit judge that the defendant was liable to the claimant under the Workmen's Compensation Act was erroneous. The exception to the decision and judgment

of the court below is sustained, the judgment is set aside and a new trial is granted.

*Jean Vaughan* (*Kemp & Stainback* with her on the briefs) for claimant.

*W. R. Ouderkirk* (also on the brief) for defendant.