# WINONA CHAI, BY HER NEXT FRIEND AND GUARDIAN AD LITEM MINNIE CHAI, v. SHIGE MURATA, RYOICHI MURATA AND MASAICHI KOBAYASHI.

## No. 2214.

ARGUED JULY 30, 1936.　　　　DECIDED NOVEMBER 16, 1936.

BANKS AND PETERS, JJ.

OPINION OF THE COURT BY BANKS, J.

By written stipulation of the parties which appears in the record the case herein decided was submitted for decision to the court with only two of its justices sitting.

This is a case in which the court below entered a judgment of nonsuit in favor of the defendants and against the plaintiff.

It is conceded that the judgment was properly entered as to Ryoichi Murata and Masaichi Kobayashi, two of the defendants, but it is contended that it was erroneously entered as to Shige Murata, the third defendant. A review of the judgment is sought by a bill of exceptions.

It is contended by the plaintiff that substantial evidence was introduced on her behalf which tended to show that the defendant, Shige Murata, was liable to her for damages suffered by her as a result of a battery inflicted upon her by one Wakazawa.

The evidence discloses that the defendant owned a piece of property located at 1650 Liliha Street in the city of Honolulu, upon which there were four buildings. Three of these were rented out and the fourth was used as a ladies' sewing school. The defendant employed Wakazawa as a yardman who performed his duties once a month. He received no instructions from his employer relative to the manner in which the service was to be performed, the time of its performance, or how often it was to be performed. There is nothing in the evidence indicating that the employer had expressly instructed the employee to keep trespassers out of the yard but there is testimony to show that he had ordered trespassers from the yard before the date of the injury to the plaintiff.

On January 7, 1930, the plaintiff and another child were playing in the yard of the defendant and Wakazawa was engaged in cutting grass. At that time the defendant owner was not on the premises. Evidently, with characteristic mischievousness of children, the plaintiff determined to tease the yardman and for that purpose went within five to seven feet of him and called him "bakatari," a Japanese word meaning a fool, or foolish, or silly. Three times the employee ordered the plaintiff to leave the premises but each time she refused and stood there calling him names. He then started after her and pushed her head in an attempt to eject her, whereupon she fell to the ground fracturing her right arm. Although Wakazawa was irritated and angry because of the plaintiff's words, nevertheless the evidence is clear that he wished to remove her from the premises because she interfered with his work. This bit of

testimony was given by Wakazawa himself who was called as a witness by the plaintiff.

Upon this point he testified on cross-examination as follows: "Q You got up and ran away [?] because she was calling you names, is that it? A Yes. Q And because you were angry? A Because she interfered with my work. Q Were you angry? A I was angry. Q That is the reason you chased her away from you? A No; I told her to leave the place because she interfered with my work." On direct examination he gave the following answers to the following questions: "Q Then when he [she] touched your shoulder what happened? A So I say, 'get away.' Q Yes. A Then she no go away, so I say go away again, but she stay over there so I no can work."

In nonsuiting the plaintiff the trial judge in his oral decision gave as his reason that the evidence showed that the conduct of the plaintiff and the employee leading up to the injury had created a situation of a personal nature between them and that the employee, to accomplish his own ends, had departed from the scope of his employment and that therefore there was no liability on the part of the defendant.

In such a case as this we are obliged to consider all the evidence to ascertain whether the plaintiff has made out a *prima facie* case. (*De Mello* v. *Bd. of Water Sup.*, 33 Haw. 133, 137.) From such a review we think a *prima facie* case was established.

It is shown by the evidence that the relationship between the defendant and Wakazawa was that of master and servant and that the latter was not an independent contractor as is contended by the defendant. The criterion of whether one is an independent contractor is laid down in *Tomondong* v. *Ikezaki*, 32 Haw. 373, 380, where this court said: "Under the law as stated in the above citations the real test of whether one is an independent contractor

is whether the person in whose behalf the work is done has the power, express or implied, to dictate the means and methods by which the work is to be accomplished. If he has not this power but it is left to the person doing the work to choose such means and methods as he deems suited to the accomplishment of the work then such person is an independent contractor." From this standard it is clear to us that in the case at bar the defendant, although she never charted the course by which the work of the employee was to be pursued, nevertheless had the implied power to control the servant in his employment. The mere fact that she did not exercise this power does not mean that the employee was independent of the master's control. If at any time during the employment she had chosen to dictate to him we have no doubt that from the nature of the employment it would have been his duty to obey.

An illuminating discussion on the subject of independent contractors is given in *Jensen* v. *Barbour,* 39 Pac. 906, 15 Mont. 582, 589, 590, 592, 593, 594, where it is said: "A rule as often quoted as any is stated in the syllabus of the case of *Bibbs* v. *N. & W. R. R. Co.,* 87 Va. 711, after an able review of the authorities, as follows: 'Independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually paid by the job.' * * * He [the employee] was simply employed by the month to run a car one trip a day. We cannot understand that his position differed materially from that of a driver employed to drive a car ten trips or twenty trips a day. All drivers are employed to perform certain services, and to some extent they perform them in their own way, as does one's cook, his gardener, or his coachman, as remarked in the case of *Brackett* v. *Lubke, supra.* Referring again to the rule as laid down in *Bibbs* v. *N. & W. R. R. Co., supra,* the

respondent argues that Vaughn represented the will of his employer only as to the result of his work, and not as to the manner of its performance; that is to say, that Vaughn contracted to deliver to his employer the result of putting the car over the track once a day by his own methods. But so it might be argued that one's coachman contracts to produce the result of conveying his master from his house to his office, or wherever he may wish to go, or one's cook contracts to produce the result of placing before his master his daily food. But such is not the sense in which the word 'result' is used in the rule. We think that the word 'result,' as so used, means a production or product of some sort, and not a service. One may contract to produce a house, a ship, or a locomotive; and such house, or ship, or locomotive produced is the 'result.' Such 'results' produced are often, and probably generally, by independent contractors. But we do not think that plowing a field, *mowing a lawn,* driving a carriage, or a horsecar, for one trip or for many trips a day, is a 'result' in the sense that the word is used in the rule. Such acts do not result in a product. They are simply a service. * * * After stating any rule which is to determine whether one is an independent contractor or a servant it is very easy, by a little casuistry, to construe any person who performs a service to be an independent contractor. We have endeavored to point out such dangers. We think that the district court fell into just such a mistake. If Vaughn, in this case, is an independent contractor, a very few steps farther in the same direction of construction would make all servants independent contractors." (Italics ours.)

The evidence also indicates that the ejectment of the plaintiff by the employee was within the scope of the latter's employment. The employer's purpose in hiring the employee was of course to get the yard cleaned. Interference with his labors naturally tended to hinder that pur-

pose and from the evidence before us there is no doubt that Wakazawa was being interfered with by a trespasser. Under these circumstances his authority to eject a trespasser who was interfering with the prosecution of his work is implied.

For the foregoing reasons we think the trial judge erred in nonsuiting the plaintiff. The exception is therefore sustained and the case is remanded for further proceedings not inconsistent with this opinion.

*W. Y. Char* (also on the briefs) for plaintiff.

*I. M. Stainback* (*Kemp & Stainback* and *S. Shapiro* on the brief) for defendants.