IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

Electronically Filed
Intermediate Court of Appeals
28742
28-SEP-2010
03:47 PM

---o0o---

GARY SUZUKI, Plaintiff-Appellant, v. CASTLE & COOKE RESORTS;
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ASSOCIATIONS 1-10; DOE GOVERNMENTAL
AGENCIES 1-10; DOE NON-PROFIT ENTITES 1-10; AND
DOE ENTITIES 1-10, Defendants-Appellees

NO. 28742

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL. NO. 06-1-0212(3))

SEPTEMBER 28, 2010

NAKAMURA, C.J., FOLEY AND FUJISE, JJ.

OPINION OF THE COURT BY FUJISE, J.

Plaintiff-Appellant Gary Suzuki (Suzuki) appeals from the August 15, 2007 judgment of the Circuit Court of the Second Circuit[1] (circuit court) in favor of Defendant-Appellee Castle & Cooke Resorts (Appellee) on Suzuki's personal injury claim. The sole issue on appeal is whether Appellee was immune from suit under the exclusive remedy provision of Hawai'i's workers' compensation law given that Suzuki had received workers' compensation benefits from a joint insurance policy held by Appellee's parent company, Castle & Cooke, Inc. (Castle & Cooke). We conclude that the circuit court erred in granting summary judgment to Appellee because Appellee had not demonstrated that it was immune from suit and was therefore entitled to judgment as a matter of law.

The essential facts of this case are not disputed. Suzuki was doing masonry work on the concrete driveway at the

---

[1] The Honorable Joseph E. Cardoza presided.

home of David Murdock, chief executive officer of Castle & Cooke, when the brakes of a parked truck, owned by Appellee, failed, causing the truck to roll down the driveway and strike Suzuki. As a result, Suzuki suffered injuries requiring surgery and rehabilitative therapy.

At the time of the accident, Suzuki was employed by Lanai Builders, a wholly owned subsidiary of Appellee, which was, in turn, wholly owned by Castle & Cooke. The State Department of Labor and Industrial Relations, under the authority of Hawaii Revised Statutes (HRS) §§ 386-193 and -194, certified Castle & Cooke to self-insure its workers' compensation benefits plans. Castle & Cooke provided workers' compensation coverage for nine related companies, including Appellee and Lanai Builders. Suzuki received benefits for his injuries through Castle & Cooke's self-insured workers' compensation program.

On June 20, 2006, Suzuki filed the underlying complaint against Appellee, alleging that the company was negligent in maintaining the truck and otherwise negligent in operating the vehicle. On June 12, 2007, Appellee filed a "Motion to Dismiss for Failure to State a Claim and/or Motion for Summary Judgment."[2] In a memorandum in support of the motion, Appellee conceded, among other things, that it breached its duty to maintain, repair, and inspect the truck that struck Suzuki and to adopt policies concerning parking the vehicle.

In claiming immunity from suit, Appellee relied upon the exclusive remedy provision in Hawai'i's workers' compensation law. This provision states:

---

[2] The circuit court granted Appellee's motion but did not specify whether it was dismissing the complaint or granting summary judgment in Appellee's favor. For purposes of review, we treat the motion as one for summary judgment under Hawai'i Rules of Civil Procedure Rule 56, not a dismissal under Rule 12(b)(6), because the circuit court was presented with matters outside of the pleadings that it did not exclude when issuing its decision. See Sierra Club v. Dep't of Transp., 115 Hawai'i 299, 312-13, 167 P.3d 292, 305-06 (2007). The circuit court's award of summary judgment is reviewed de novo. Frank v. Hawaii Planning Mill Found., 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) (citing Konno v. Cnty. of Hawai'i, 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997)).

> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

HRS § 386-5 (1993). Appellee also cites to Frank for the proposition that "the company that secured the workers' compensation coverage in accordance with the statutory requirements was entitled to tort immunity as the statutory employer."

In Frank, a case involving a loaned or borrowed employee, the Hawai'i Supreme Court adopted a three-prong test in evaluating whether an entity was a "statutory employer" for workers' compensation purposes. A business must show that "(1) a contract of hire, express or implied, existed between [the plaintiff and business]; (2) the work being done was essentially that of the statutory employer; and (3) the statutory employer had the right to control the details of the work." Id., 88 Hawai'i at 146 n.6, 963 P.2d at 355 n.6 (citing Ghersi v. Salazar, 883 P.2d 1352, 1356-57 (Utah 1994) (quoting 1B Arthur Larson, Workmen's Compensation Law § 48.00, at 8-434 (1992))).

In this case, Appellee failed to produce evidence establishing that this test was met. Indeed, the record reveals the parties disputed at least two material facts: whose work was being done by Suzuki when he was injured and who controlled Suzuki's work at the job site. Therefore, it cannot be said that Appellee proved it was Suzuki's statutory employer.

When a party fails to prove that it is a worker's statutory employer, the question remains whether the party is the worker's actual employer. See Lane v. Kingsport Armature & Elec., 676 F. Supp. 108, 110-11 (W.D. Va. 1988) (examining first whether the defendant was the "statutory employer" under Virginia law, then whether the defendant could be considered the "actual

employer"). The test for determining whether an employer-employee relationship exists for purposes of Hawai'i's workers' compensation laws is the "control test." Locations, Inc. v. Hawai'i Dept. of Labor & Indus. Relations, 79 Hawai'i 208, 212-13, 900 P.2d 784, 788-89 (1995) (citing Yoshino v. Saga Food Serv., 59 Haw. 139, 143, 577 P.2d 787, 790 (1978)). "Under the control test, an employment relationship is established when 'the person in whose behalf the work is done has the power, express or implied, to dictate the means and methods by which the work is to be accomplished.'" Id., 79 Hawai'i at 211, 900 P.2d at 787 (quoting Tomondong v. Ikezaki, 32 Haw. 373, 380 (1932)).

Appellee states that the "CEO for CASTLE & COOKE[], David H. Murdock, and/or his subordinates requested that LANAI BUILDERS build and install the concrete driveway" where Suzuki was injured. Appellee later contends that Suzuki was working for Lanai Builders, Appellee, and Castle & Cooke, so Appellee "presumably had the right to control the details of the work." However, Appellee also submitted Suzuki's deposition, wherein Suzuki testified that he received his paycheck from Lanai Builders, he was working with other Lanai Builders employees on the day of the accident, and he had been hired by Lanai Builders. Accordingly, there is a genuine issue of material fact regarding who controlled Suzuki's work. As such, Appellee did not establish that it was undisputedly Suzuki's actual employer.

Even if Appellee was unable to prove that it was Suzuki's statutory or actual employer, it would be entitled to the immunity of Lanai Builders if, as it claims, the companies "are so completely integrated and commingled that [Suzuki] could not realistically view them as separate entities." By this argument, Appellee has put itself in the unusual position of a parent corporation arguing that its subsidiary's separate status should be disregarded.[3]

---

[3] Ordinarily it is the corporation that is trying to insist on its separateness from its subsidiary, and it

(continued...)

Hawai'i courts are generally reluctant to disregard the corporate entity. Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 241 n.12, 982 P.2d 853, 870 n.12 (1999), superceded by statute on other grounds as noted in Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 428 n.9, 228 P.3d 303, 308 n.9 (2010). In fact, the Hawai'i Supreme Court has said "the legal entity of the corporation will be disregarded only where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." Chung v. Animal Clinic, Inc., 63 Haw. 642, 645, 636 P.2d 721, 723 (1981) (citations omitted). Appellee does not argue that such circumstances exist here.

In Michigan, the jurisdiction predominately cited by Appellee for support, the state supreme court acknowledged that although piercing the corporate veil was a tactic typically employed against corporate defendants, public policy justified its use for their benefit as well. The court reasoned:

> The statutory workers' compensation scheme was enacted for the protection of both employees and employers who work and do business in this state. The system assures covered employees that they will be compensated in the event of employment-related injuries. In addition, employers are assured of the parameters of their liability for such injuries. By agreeing to assume responsibility for all employment-related injuries, employers protect themselves from the possibility of potentially excessive damage awards. In order to effectuate these policies, the statute has been liberally construed to provide broad coverage for injured workers.
>
> If the statute is to be construed liberally when an employee seeks benefits, it should not be construed differently when the employer asserts it as a defense to a tort action brought by the employee who claimed and accepted benefits arising from that employment relationship.

---

[3] (...continued)
    is the plaintiff that is trying to "pierce the
    corporate veil." But here the positions are reversed.
    The parent strives to disavow its separateness so as
    to assume identity with its subsidiary and thus share
    its immunity as employer."

10 Larson's Workers' Compensation § 112.01, at 112-2 (Matthew Bender rev. ed. 2010).

Wells v. Firestone Tire & Rubber Co., 364 N.W.2d 670, 674-75
(Mich. 1984) (citation omitted).

Michigan's position is anomalous, however, to the
general view that a separate corporate identity, once created,
should be kept in place when applying workers' compensation
exclusive remedy laws.  See Volb v. GE Capital Corp., 651 A.2d
1002, 1008-09 (N.J. 1995) (listing courts that refuse to disturb
the corporate distinction between parent and subsidiary at the
request of defendants claiming immunity); see also Wells, 364
N.W.2d at 677 (Levin, J., dissenting) ("The vast majority of
states do not extend the reach of the exclusive remedy provision
of a workers' compensation act by treating parent and subsidiary
corporations as a single entity.").  A parent company's attempt
to reverse-pierce the corporate veil "makes it vulnerable to the
argument that the parent, having deliberately set up the
corporate separateness for its own purposes, should not be heard
to disavow that separateness when it happens to be to its
advantage to do so."  10 Larson's Workers' Compensation Laws
§ 112.01, at 112-2 (Matthew Bender rev. ed. 2010)  The Sixth
Circuit, refusing to pierce the veil for a corporate defendant,
explained further:

> [A] business enterprise has a range of choice in controlling
> its own corporate structure.  But reciprocal obligations
> arise as a result of the choice it makes.  The owners may
> take advantage of the benefits of dividing the business into
> separate corporate parts, but principles of reciprocity
> require that courts also recognize the separate identities
> of the enterprises when sued by an injured employee.

Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 662 (6th Cir.
1979).  The unwillingness to reverse-pierce the corporate veil is
particularly strong where, as is the case here, "the parent's
liability as a separate entity arises under customary principles
of common law and is not derivative liability based on the
negligence of the subsidiary."  1 Fletcher Cyc. Corp. § 43.50
(Rev. ed. 2006).

Hawai'i uses the alter ego test before determining
whether the corporate veil should be pierced.  Robert's Hawaii

School Bus, Inc., 91 Hawai'i at 241, 982 P.2d at 870. The Hawai'i Supreme Court has listed more than twenty factors to evaluate whether one entity is another's alter ego, among them whether the companies commingled funds, employed the same people, have identical ownership, or have shared directors and officers with supervisory or managerial responsibilities over both companies. Id., at 241-43, 982 P.2d at 870-72 (citing Associated Vendors, Inc. v. Oakland Meat Co., 26 Cal. Rptr. 806, 813 (Cal. Dist. Ct. App. 1962)). "Ultimately, no one factor is dispositive." Id., 91 Hawai'i at 243, 982 P.2d at 872.

Although Appellee asserts there is complete integration between Castle & Cooke, Appellee, and Lanai Builders, the circuit court made no finding that Appellee was Lanai Builders' alter ego. Appellee notes the fact that Appellee is the sole stockholder of Lanai Builders and that the companies' financial statements are consolidated for reporting and auditing purposes. There is, however, no evidence of shared management or directors. From the scant evidence presented by Appellee we cannot conclude that there is no dispute regarding whether Appellee is the alter ego of Lanai Builders.

Furthermore, the shared workers' compensation insurance policy between Castle & Cooke and its subsidiaries is insufficient to establish Appellee as Lanai Builders' alter ego. Appellee does not cite, nor could we find, any jurisdiction that extends a subsidiary's tort immunity to the parent company solely based on a shared workers' compensation insurance plan. While some courts view a shared workers' compensation plan as a persuasive factor in determining that a parent and subsidiary should be treated as one entity, Wheeler v. Couret, 182 F. Supp. 2d 330, 334 (S.D.N.Y. 2001), Verhaar v. Consumers Power Co., 446 N.W.2d 299, 300 (Mich. Ct. App. 1989), others have said that shared workers' compensation coverage "has little, if any, relevance to the issue of whether the parent corporation is the subsidiary corporation worker's employer." Stoddard v. Ling-Temco-Vought, Inc., 513 F. Supp. 314, 326 (C.D. Cal. 1980)

(citing <u>O'Brien v. Grumman Corp.</u>, 475 F. Supp. 284, 292 (S.D.N.Y. 1979) and <u>Latham v. Technar, Inc.</u>, 390 F. Supp. 1031 (E.D. Tenn. 1974)). The Florida Supreme Court reasoned that "[t]he decision of a parent to include a subsidiary within a joint [workers'] compensation policy is usually an economic one[,]" but the state's legislature did not intend for such policies to limit third-party tort liability. <u>Gulfstream Land & Dev. Corp. v. Wilkerson</u>, 420 So.2d 587, 589 (Fla. 1982), <u>superceded by statute as noted in</u> <u>Ostuni v. Meineke Disc. Muffler Shops, Inc.</u>, 948 So.2d 848 (Fla. Dist. Ct. App. 2007). While a shared insurance policy may contribute to the finding that a parent corporation is the alter ego of its subsidiary, it is not conclusive.

The circuit court therefore erred in granting summary judgment. The August 15, 2007 judgment of the Circuit Court of the Second Circuit in Appellee's favor is vacated and remanded for further proceedings.

On the briefs:

T.J. Lane,
for Plaintiff-Appellant.

Milton S. Tani
(Randall Y.S. Chung with him
on the briefs)
(Matsui Chung)
for Defendant-Appellee.