773 P.2d 228

**Rick ZIV, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent.**

**Sunburst Industries, Inc., Respondent Employer.**

**Fremont Indemnity Company, Respondent Carrier.**

**No. 1 CA–IC 3846.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 26, 1989.

Review Denied June 6, 1989.

Jerome, Gibson & Stewart by James L. Stevenson, Phoenix, for petitioner.

Catherine A. Fuller, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Jones, Skelton & Hochuli by Calvin Harris and Melinda K. Kelley, Phoenix, for respondents Employer and Carrier.

## OPINION

JACOBSON, Judge.

Petitioner Rick Ziv (claimant) seeks special action review of an Industrial Commission award for a noncompensable claim. We frame the issue as did the administrative law judge: "The essential question is whether an employee who is in effect also the owner and operator of a business and who becomes ill because of the failure or the impending failure of such business is deemed to have sustained [a mental] injury by accident arising out of and in the course of his employment." We find that the administrative law judge reasonably interpreted the medical testimony to conclude that claimant's mental injury was caused by his entrepreneurial role rather than an employer-employee relationship. We also hold that mental injuries caused by such business risks do not constitute the unexpected, unusual, or extraordinary stress covered by workers' compensation. We therefore affirm the award denying compensation.

### Factual Background

On February 14, 1986, claimant sustained a mental breakdown. He sought medical attention on March 6, 1986, and was hospitalized. On May 14, 1986, he filed a worker's report of injury alleging that the mental breakdown was attributable to the failure of the company he owned. The respondent carrier, Fremont Indemnity Company (Fremont), denied compensability and claimant timely requested a hearing. Five hearings were held over an eight-month period and voluminous testimony was taken. Testifying were claimant, his wife, his psychiatrist, the prior owner of the business, and a representative from the former major customer.

Claimant testified that he had an extensive background in sales and marketing. In 1984 he and his wife moved to Mesa and decided to buy an ongoing business. A business broker introduced them to William G. Jackson, owner of the respondent employer, Sunburst Industries, Inc. (Sunburst). Sunburst was a specialty garment manufacturing company, whose major customer was Karsten Manufacturing, for which it produced golf club head covers. Claimant purchased the business on a highly leveraged basis, and Jackson agreed to remain as a paid sales consultant. His job was to maintain the Karsten account and to develop new customers.

After the sale, claimant alleged that Jackson, the former owner, had misrepresented the financial condition of the company and misstated its assets. In addition, he claimed that Jackson's personality was completely erratic, shifting from friendly and pleasant to irrational and violent without warning. Claimant testified he believed that Jackson regretted having sold the business and hoped to drive him out and reclaim it; that Jackson carried a gun and had been arrested for beating up someone; and that Jackson had drained money from Sunburst's qualified pension and prof-

it sharing plan and was being investigated by the IRS. Further, he claimed that Jackson mishandled the Karsten account and caused its cancellation. This accounted for the loss of approximately 50% of the company's income and resulted in severe financial difficulties. All of these allegations are repeated in a civil action that claimant is pursuing against Jackson.

Claimant testified that, by February 1986, he was depressed, physically exhausted, and feared for his life. He stated that Jackson's interference with Sunburst's employees, its bank, and the business had finally worn him down so that he was unable to continue in the business. Claimant's wife, an experienced businesswoman, stepped in to manage Sunburst for him. By February 14, 1986, claimant completely broke down and was unable to function. He was suicidal, depressed, and anxious. His wife admitted him to Camelback Hospital where he spent several weeks. Since his release from Camelback Hospital, claimant has continued in psychiatric therapy. Claimant's wife, Nancy Cline Ziv, confirmed her husband's testimony.

William G. Jackson, the former owner of Sunburst, testified in direct contradiction to both claimant and his wife, that the business failed due to claimant's inexperience and poor management, that he completely lived up to his bargain with claimant, and that he was completely honest in the sale of the business.

Walter Fox, M.D., a board-certified psychiatrist, testified about his treatment of claimant. He first saw claimant on March 6, 1986, when he was admitted to Camelback Hospital. Claimant was suffering from overwhelming anxiety, confusion, suicidal ideas, and an inability to function in any aspect of his life. Dr. Fox received a history from claimant of the purchase of a speciality garment manufacturing business in spring 1984. After its purchase, claimant developed many personality problems with the prior owner after he discovered that the prior owner was dishonest and had misstated the business's assets and financial condition. The business lost its major customer and a number of lawsuits ensued.

Finally, these difficulties resulted in bankruptcy.

Dr. Fox testified that claimant blamed the former owner for loss of the company's major account and felt betrayed by him. Claimant felt he had misjudged the former owner, which caused him to question his own judgment. Dr. Fox testified that claimant's hospitalization was precipitated by his business problems and impending bankruptcy, and that claimant perceived Jackson's betrayal as largely responsible for his business failure and also as a factor in his mental illness. In Dr. Fox's opinion, the reasons for claimant's breakdown were actually the loss of the business, letting down his wife, and concern for his child. Dr. Fox testified that some fears about Jackson emerged in psychodrama at the time of claimant's hospitalization, but that claimant's feelings about Jackson weren't actually focused at that time; rather, only on reflection during his therapy did claimant begin to feel that Jackson had a major role in his problems. The doctor reiterated that claimant's major feeling was merely that he had failed.

On October 19, 1987, the administrative law judge entered an award for a noncompensable claim. The award was affirmed on administrative review, and this special action followed.

### Claimant's Mental Injury

Claimant contends that Jackson's fraud, mental abuse, breach of fiduciary duty, conversion, theft, interference with prospective business opportunities, physical intimidation, and death threats were the cause of the business failure. From this premise claimant argues that the administrative law judge erred because Jackson's conduct should have been considered to have caused unexpected, unusual, or extraordinary stress which was a substantial contributing cause of his mental injury. Claimant also argues that the administrative law judge erred by concluding that only claimant's impending business failure was the substantial contributing cause of his mental injury without considering the cause of that failure, which he asserts was

Jackson's conduct. Claimant states that this improperly narrowed the scope of a "substantial contributing cause."

Fremont responds that the psychiatric testimony established that claimant's mental injury was caused by his business failure and not his conflicts with Jackson. Further, Fremont argues, business failure is not sufficiently unexpected, unusual, or extraordinary to warrant compensability.

 Claims for mental injuries are provided for by A.R.S. § 23–1043.01(B):

> A mental injury, illness or condition shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless some unexpected, unusual or extraordinary stress related to the employment or some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition.

Claimant bears the burden of establishing that his mental condition is causally related to the industrial injury. *Owens v. Industrial Comm'n*, 129 Ariz. 79, 628 P.2d 962 (App.1981). When the causal connection between the accident and the mental condition is not readily apparent to laymen, it must be established by expert medical testimony. *El Dorado Ins. Co. v. Industrial Comm'n*, 27 Ariz.App. 667, 558 P.2d 32 (1976). Claimant has the burden to establish all elements of a compensable claim. *Toto v. Industrial Comm'n*, 144 Ariz. 508, 698 P.2d 753 (App.1985).

 The test for determining the measure of emotional stress is objective and not subjective. *Pima Community College v. Industrial Comm'n*, 137 Ariz. 137, 669 P.2d 115 (App.1983). The focus of this test is whether the alleged stress-producing event is found to be unexpected, unusual, or extraordinary. *Lapare v. Industrial Comm'n*, 154 Ariz. 318, 742 P.2d 819 (App. 1987). This court recently held that job losses, reductions in pay, layoffs and plant closures may cause emotional distress but are not unexpected, unusual, or extraordinary in modern society. *Id.* Professor Larson explains why:

> Apart from some distinctly unusual accompanying circumstances such as being under investigation, mere anxiety over job loss has failed to produce awards in the great majority of reported cases. The basic idea is that, in a private enterprise system, the possibility of job loss is a normal and expected feature of employment life, as is also the attendant insecurity and worry.

1B A. Larson, *Workmen's Compensation Law* § 38.65(d) at 7–257 (1987) (footnotes omitted). In *Lapare*, we concluded:

> In summary, threatened economic hardship, including such naturally traumatic events as lay offs and plant closures, may indeed set the stage for varying degrees of emotional stress on the part of the affected employees. Their remedy, however, does not lie with workers' compensation benefits. Other remedies or social programs must be pursued.

154 Ariz. at 321, 742 P.2d at 822. The administrative law judge, relying in part on the *Lapare* reasoning, concluded as follows:

> If indeed an employee can't obtain benefits as a result of fear of a layoff, likewise an employee can't obtain benefits for a mental condition as a result of fear of business failure. If such were the case, a pandora's box would be opened with disgruntled and unsuccessful employers or employees in effect having claims as a right to benefits as a result of emotional reaction thereto to layoffs or business failure.... That a neophyte employer has difficulty operating a new business and loses accounts and ultimately loses his business is not necessarily unexpected, extraordinary, or unusual....

 We agree with the administrative law judge's premise that the emotional stress arising from the entrepreneurial risk of business failure is not an injury that was intended to be covered by the workers' compensation act. The mental stress that accompanies an entrepreneur's prospect of economic loss or business failure cannot be considered "unexpected, unusual, or extraordinary" from an objective view of the

economic realities of the American marketplace. Claimant concedes in his opening brief that workers' compensation is not intended to cover emotional stress that is "inherent in life, generally." He also concedes that "risk is inherent" in our private enterprise system. We therefore hold that if claimant's mental injury arose out of his entrepreneurial role as business owner rather than from the conditions of his employment, he was properly denied benefits. We must next determine whether the administrative law judge's conclusion that claimant did not meet his burden of proving an employment-related mental injury was supported by any reasonable theory of the evidence. *See Greenlaw Jewelers v. Industrial Comm'n*, 127 Ariz. 362, 621 P.2d 49 (App.1980).

Dr. Fox's testimony is central to the resolution of this issue. Dr. Fox was asked several times what caused claimant's mental breakdown and led to his hospitalization. Although he acknowledged that claimant had many difficulties with Jackson, he refused to state that these problems were a substantial contributing cause of claimant's mental injury. In fact, he repeatedly testified that the hospitalization was precipitated by claimant's business problems.

In interpreting Dr. Fox's testimony, the administrative law judge made the following key findings:

8. While applicant had many business problems while operating defendant employer and the loss of principal account may have led to the ultimate business failure; according to Dr. Fox, what precipitated applicant's hospitalization and onset of illness was the fact that applicant's business was failing. Regardless of operating problems, the significant reason for applicant's mental condition was the impending failure of his business. That applicant became fearful of the former owner and felt betrayed was not the significant basis for his illness although recollection of the past may substantially have lengthened the duration thereof.

9. While Dr. Fox stated applicant may have had a lot of different feelings regarding Mr. Jackson and the events preceding shutting down of business, Dr. Fox in effect stated that the cause of applicant's disorder was that he engaged in a risky and essentially financially disastrous business venture which failed and applicant would not have become ill but for the pending loss of business and consequences thereof on applicant's ego and personality.

. . . .

11. Based upon the testimony of Dr. Fox, the basic cause of applicant's mental illness, injury or condition was indeed a reaction to the failure or impending failure of applicant's business and not to any particular problem related to applicant's conduct as an employer or an employee of defendant employer.

12. *Essentially, it is not believed that applicant's mental illness arose out of conditions of his employment but arose because of business failure which relates to the entreprenurial rather than employer-employee role or relationship....*

(Emphasis added).

We have reviewed Dr. Fox's testimony and hold that the administrative law judge could have reasonably interpreted Dr. Fox's testimony to conclude claimant's stress-related mental injury was precipitated by his business failure and not his conflict with Jackson. When medical findings concerning causation are uncontroverted and based on matters peculiarly within the realm of medical knowledge, the findings are conclusive upon the Commission. *Cammeron v. Industrial Comm'n*, 98 Ariz. 366, 405 P.2d 802 (1965). No other medical testimony was presented; thus, the administrative law judge had discretion to interpret Dr. Fox's testimony as he did, in the absence of medical testimony that claimant's mental injury was employment-related.

Claimant tacitly concedes that the medical evidence suggests the conclusion that his mental breakdown was the result of the business failing, rather than his conflicts

with Jackson. However, he argues that if the business failure was due to the disloyal acts of Jackson, rather than to normal business reasons, the business failure itself becomes "unexpected, unusual, or extraordinary," and therefore compensable. We disagree. A business may fail for many reasons, some of which might be expected (lack of experienced management), some may be an act of God (fire caused by lightning), and some may be completely unexpected (embezzlement by an employee). In the final analysis, however, any business failure is unexpected, for no one ever starts a business anticipating that it will not succeed. Whatever the reasons, some enterprises succeed and others fail, but success or failure is all encompassed within the entrepreneurial risk of an investment increasing or being lost. If the mental injury is caused by the loss of this capital investment, in either time or money, associated with that entrepreneurial risk, the injury is not compensable under the workers' compensation act.

### Existence of Other Remedies

In interpreting the testimony to conclude that claimant's mental injury was not compensable, the administrative law judge also made the following finding about the potential existence of remedies outside the scope of workers' compensation:

15. If, indeed, one accepts applicant's testimony in toto as to what he believes were the causes of his illness and disregards the medical evidence, it would appear there had been an intentional infliction of emotional distress upon applicant as referred to in *Ford v. Revlon*, 153 Ariz. 38, 734 P.2d 580 (1987). According to such case, damages resulting therefrom are not properly a part of Worker's Compensation proceedings and should be heard and held in a different [forum] with the employer not being responsible for the risks engendered by such condition.

Claimant argues that the administrative law judge erred by applying *Ford* to this case because this application of *Ford* colored the administrative law judge's interpretation of Dr. Fox's testimony. We have

reviewed Dr. Fox's testimony. We find no error in the administrative law judge's interpretation of that testimony.

Furthermore, finding 15 appears to us to be an alternative finding and superfluous to the resolution of the issues in this case, when considered with finding 16:

16. If indeed, Mr. Jackson's testimony is accepted and one disregards the medical evidence, the business failure precipitated applicant's illness and the events that occurred are not necessarily ones that one might consider as being unexpected, unusual, or extraordinary.... At least, no proof was offered that such indeed was the case.

Thus, the administrative law judge gave no indication that he actually adopted the applicant's testimony in toto or that he relied on an alternative claim for intentional infliction of emotional distress to deny the compensability of the claimant's mental injury.

For all of the foregoing reasons, we affirm the award of the Industrial Commission.

FIDEL, P.J., and EUBANK, J., concur.