**CITY MARKET, INC., Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO, Department of Labor and Employment, State of Colorado, Robert Husson, as Director of the Division of Labor, Colorado Department of Labor and Employment, and Gale E. Whittington, individually, Respondents.**

No. 89CA1004.

Colorado Court of Appeals, Div. III.

July 19, 1990.

Rehearing Denied Oct. 25, 1990.

Certiorari Denied Dec. 10, 1990.

Nelson, Hoskin, Groves & Prinster, P.C., David A. Price, Michael J. Russell, Grand Junction, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, Asst. Atty. Gen., Denver, for respondents Indus. Claim Appeals Office, Dept. of Labor and Employment and Director, Div. of Labor.

Withers, Seidman & Rice, P.C., Christopher Seidman, Grand Junction, for respondent Gail E. Whittington.

Opinion by Judge JONES.

City Market, Inc., employer, seeks review of a final order of the Industrial Claim Appeals Office (Panel) which awarded disability benefits to Gale E. Whittington,

claimant, based on a finding that she had sustained a compensable injury attributable to mental and emotional stress. We affirm.

The Panel affirmed the decision of an Administrative Law Judge (ALJ) who made the following findings. Claimant worked for employer for 13 years and ultimately achieved the position of general merchandise manager. Her duties included the task of "price checking" at competing stores with her male supervisor, the store manager. On May 11, 1987, while traveling on a price checking assignment, the supervisor "repeatedly touched the claimant in a manner reasonable construed by the claimant to be a sexual advance". Claimant "became upset" as a result of the incident which directly caused her to resign her position with the employer.

On June 30, 1987, claimant notified her employer of the incident. After several meetings between claimant and employer's personnel, and after consulting with counsel, claimant entered into an agreement with her employer, dated July 27, 1987. Pursuant to the agreement, claimant was reinstated as general merchandise manager; she agreed to release employer of all claims arising out of her employment prior to the date of the agreement; and she agreed not to disclose to anyone the incident of May 11, 1987, under penalty of paying $1,000 to her employer.

Upon returning to full-time work, the supervisor's son and other co-employees would not speak to claimant. The record reflects that interaction with these people was a significant requirement of claimant's position. As a result of being shunned and ostracized, claimant experienced substantial mental stress. Based on this stress, she again resigned from her employment on October 22, 1987. At the time of the administrative hearing, claimant had not worked or been offered a job with any other employer.

In April 1988, claimant sought worker's compensation benefits. The ALJ concluded that the July 27, 1987, agreement, releasing employer from any liability, was void because it did not comply with the provisions of § 8–53–105, C.R.S. (1989 Cum. Supp.). Based on the above findings, the ALJ also determined that the claim of mental or emotional stress, which arose "in significant part" out of the conduct of the employer's workers toward claimant after she returned to work, met the requirements of § 8–41–108(2.2), C.R.S. (1986 Repl.Vol. 3B) and § 8–52–102(2), C.R.S. (1986 Repl.Vol. 3B). Accordingly, the ALJ awarded claimant medical and temporary total benefits.

I.

On review, employer contends that the release executed in July 1987 should bar a subsequent worker's compensation claim based on the incident. It argues that public policy considerations do not bar settlement of an un-filed and unreported worker's compensation claim. We disagree.

The Panel concluded, and we agree, that the requirement imposed by § 8–53–105, C.R.S. (1986 Repl.Vol. 3B)— that settlements be approved by a hearing officer or director—implements important public policy considerations concerning society's interest in assuring the payment of compensation benefits to employees injured in the course of their employment. *See Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.1985). In our view, such considerations are all the more vital to a situation in which, as here, the parties enter into an agreement, prior to the filing of a claim, which purports to release the employer from any obligation under the Worker's Compensation Act (Act). *See generally* 4 A. Larson, *The Law of Worker's Compensation* 82.32 (1989).

Section 8–52–107(1), C.R.S. (1986 Repl. Vol. 3B) provides that claims for compensation or benefits due under the Act shall not be assigned, released, or commuted except as provided in the Act. Pursuant to § 8–53–105, a release or settlement of worker's compensation benefits requires approval of an ALJ or the Director of the Division of Labor. Therefore, we conclude that the agreement of July 1987 did not

operate to waive claimant's rights under the Act. *See Oxford Chemicals, Inc. v. Richardson,* 782 P.2d 843 (Colo.App.1989).

## II.

Employer next contends that the Panel erred in affirming the ALJ's award of benefits for mental or emotional stress. We disagree.

Section 8–52–102(2), C.R.S. (1986 Repl. Vol. 6B) provides:

"Where the claim is by reason of mental or emotional stress, or by reason of injuries or death caused by or resulting from mental or emotional stress, said right to compensation shall obtain only in those cases where all of the following additional conditions occur:

"(a) The claim of emotional or mental stress must be proven by evidence supported by the testimony of a licensed physician or psychologist;

"(b) The emotional or mental stress which is the basis of the claim must have arisen primarily from the claimant's then occupation and place of employment;

"(c) The claim of emotional or mental stress cannot be based, in whole or in part, upon facts and circumstances that are common to all fields of employment; and

"(d) The emotional or mental stress which is the basis of the claim must be, in and of itself, either sufficient to render the employee temporarily or permanently disabled from pursuing the occupation from which the claim arose or to require medical or psychological treatment."

■ The employer concedes that under § 8–52–102(1)(c), C.R.S. (1986 Repl.Vol. 3B), the incident here arose out of and in the course of claimant's employment. *Cf. Patel v. Thomas,* 793 P.2d 632 (Colo.App. 1990). Nevertheless, it asserts that the more stringent requirements of § 8–52–102(2)(b), C.R.S. (1986 Repl.Vol. 3B) have not been met. It further argues that by using the words "occupation" and "place of employment" in § 8–52–102(2)(b), the General Assembly intended to compensate only stresses resulting from pressures or occurrences which are natural incidents of a claimant's principal work and work environment.

The Panel concluded that § 8–52–102(2)(b) imposes an additional requirement beyond that found in § 8–52–102(1)(c). Thus, it found that § 8–52–102(2)(b) requires that the stress must result from the nature of a claimant's work such as the occupation at the time of the injury and the nature of the work environment. However, the Panel rejected the notion that the statute imposes a foreseeability requirement. We agree.

Here, claimant's managerial position, by its nature, required her to interact on a daily basis with other employees, as well as with her supervisor. The price-checking duty was one that required the claimant to travel and work in close proximity with her supervisor. Thus, the stress-producing incident and its aftermath occurred as a result of the nature of claimant's occupation and environment, even though the events precipitating her disability were not necessarily normal, natural, or foreseeable. Accordingly, the additional requirement of § 8–52–102(2)(b) was satisfied.

## III.

■ Employer further contends that the claimant did not meet her burden of proving, under § 8–52–102(2)(c), C.R.S. (1986 Repl.Vol. 3B), that the alleged sexual advances by her supervisor and the subsequent treatment by co-employees were not common to all fields of employment. It maintains that the stress claim must logically be tied to a particular profession, business, or line of work. We disagree.

The Panel concluded, and we agree, that it is sufficient merely to show that the stress producing incidents were not usual, ordinary, or customary in all fields of employment. *See White Star Linen Rental v. Industrial Claim Appeals Office,* 787 P.2d 189 (Colo.App.1989). *See also Holme, Roberts & Owen v. Industrial Claim Appeals Office,* 800 P.2d 1332 (Colo.App. 1990).

IV.

Finally, employer asserts that the facts and circumstances relied upon by the ALJ to compensate claimant fail to satisfy the definitional requirements of § 8–41–108(2.2), C.R.S. (1986 Repl.Vol. 6B). We disagree.

Section 8–41–108(2.2) states that the terms "accident," "injury," or "occupational disease" are:

"not [to] be construed to include disability ... caused by or resulting from mental or emotional stress unless it is shown by competent evidence that such mental or emotional stress is proximately caused solely by hazards to which the worker would not have been equally exposed outside the employment."

The cause of a disability is a factual determination. *See F.R. Orr Construction Co. v. Rinta,* 717 P.2d 965 (Colo.App.1985). Here the ALJ concluded with record support that the criteria of § 8–41–108(2.2) had been met. Implicit in this determination is the finding that claimant would not have been equally exposed outside of her employment to the stressful conditions which caused her disability because her employment required interaction and communication between her and her supervisor and co-workers. As the finding is supported by the evidence, it is binding on review. *See May D & F v. Industrial Claim Appeals Office,* 752 P.2d 589 (Colo.App.1988).

All of employer's other contentions are without merit.

The order is affirmed.

STERNBERG, C.J., and NEY, J., concur.