**Jose MORENO**

v.

**NULCO Mfg. Corp.**

**No. 90–225–M.P.**

Supreme Court of Rhode Island.

May 24, 1991.

John F. McBurney, III, and John F. McBurney, Pawtucket, for plaintiff.

Howard L. Feldman, Chisholm & Feldman, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the petition for certiorari of NULCO MFG. CORP. (NULCO) to review a final decree of the Appellate Commission awarding compensation benefits to Jose Moreno (employee) for stress and a resulting nervous condition that allegedly occurred during his employment. We quash the final decree of the Appellate Commission. The facts of the case insofar as pertinent to this petition for certiorari are as follows.

The employee had been employed by NULCO for approximately one and one-half years as of December 11, 1985. His work consisted of welding and assembling pieces that were ultimately portions of finished lamp products fabricated by NULCO. On December 11, 1985, employee was in the process of checking out after working from 7 a.m. to 3:30 p.m. As part of the checking-out process it was necessary for employee to "punch a clock." As he was in the line preparatory to "punching out," one of his supervisors took a lunch bag from employee in a manner characterized by em-

ployee through an interpreter as "in the brutality way." The supervisor searched inside the bag, found only a lunch pail, and returned it to employee with an apology. The employee testified that there were other people around while the supervisor searched the bag. On cross-examination employee stated that he was not accused of stealing and that there was no search of his person. The employee left the work place but returned the next day with a coworker named Felix Gonsalves, who had suggested that he return for a meeting with the supervisor who had searched his lunch bag. This supervisor and another "boss" told employee that the search of the lunch bag was a mistake and that they were sorry for what had been done on the prior day. Both supervisors admitted that employee's lunch bag should have been searched in the office and not in the presence of other people.

On December 16, 1985, employee went to Dr. John Ruggiano, a psychiatrist, and stated that he was unable to sleep or to eat. The psychiatrist testified through his affidavits and reports that employee was unable to work because of an "adjustment disorder with depression." The doctor was summoned by the attorney for NULCO and cross-examined. In the course of cross-examination, the doctor stated that according to the history given to him by employee, he was falsely accused at work of stealing and robbing. The history included a statement that employee had been patted down and also that he had been verbally accused of stealing. The doctor testified that he had relied heavily on the history in forming his opinion in regard to disability. Also introduced into evidence were certain answers to interrogatories relating to this incident that had been filed in a complaint in the Superior Court by employee against NULCO. These answers to interrogatories stated that "defendants falsely accused me of stealing and they took my lunch bag and searched it."

After considering the testimony of employee and that of the psychiatrist, the trial commissioner found that employee had not told the truth to his psychiatrist and that, therefore, the testimony of Dr. Ruggiano was lacking in credibility since it was based upon an untruthful history. Consequently the trial commissioner denied and dismissed the petition for benefits and concluded that employee had not sustained the burden of proving by a fair preponderance of credible evidence that he sustained a compensable injury in the course of his employment on December 11, 1985.

The Appellate Commission did not find that the trial commissioner was clearly wrong in his credibility assessment but asserted that the trial commissioner's opportunity to assess the credibility of a witness testifying through an interpreter is somewhat diminished. The Appellate Commission then went on to say that its review of the record disclosed that employee's testimony, his responses to interrogatories ("most likely framed by his attorneys"), and the history as recorded by his attending psychiatrist "are essentially consistent."

■ We are of the opinion that in reaching this conclusion, the Appellate Commission overlooked its limitations as set forth in *Davol, Inc. v. Aguiar*, 463 A.2d 170 (R.I.1983). In that case we instructed the Appellate Commission that it may not set aside findings based on credibility determinations unless it first finds that the trial commissioner's findings are clearly wrong or that the trial commissioner misconceived or overlooked material evidence. *Id.* at 173–74. In the case at bar the Appellate Commission made no such finding, nor could it be made since a review of the record indicates that the trial commissioner neither overlooked nor misconceived material evidence. The portion of the testimony quoted by the Appellate Commission clearly indicates that employee was not accused of stealing, that his person was not searched, and that the only indignity which he suffered was that the supervisor took his lunch bag from him and looked inside to see if some parts owned by the company had been placed therein. The bag was immediately returned with the statement "I'm sorry."

■ It should be noted that there was uncontradicted testimony introduced by NULCO that established company policy required all employees to be subject to searches in order to determine that no company product was being removed from the work place. All employees, including the subject employee, had been notified in writing of this policy. The Appellate Commission referred to this evidence as a "red herring." We believe that the evidence is both relevant and material since a search of a lunch bag or other repository of personal effects has less significance if it is part of a general policy than if it constitutes an unusual or unprecedented event.

It is equally clear from the testimony of the psychiatrist that the history given to him included a statement that employee had been publicly accused of stealing and that his person had been searched. These facts were clearly untrue and not consistent with employee's testimony. The finding by the Appellate Commission that the answers to interrogatories and the history given to the psychiatrist were "essentially consistent" was in itself clearly wrong, based upon the testimony that had been given before the trial commissioner.

In any event, the Appellate Commission chose to treat the matter as a mixed question of law and fact and decided that employee had met the test established by this court in *Seitz v. L & R Industries, Inc.*, 437 A.2d 1345 (R.I.1981). In that case we very carefully pointed out, after analyzing cases from other jurisdictions and academic writings on the subject, that psychic injuries would be compensable only in the event that a dramatically stressful stimulus could be established. We specifically observed that ordinary stresses encountered by thousands of employees in the work place would not meet the test of such a dramatic stimulus. We summarized our opinion with the following language:

"The courts are reluctant to deny compensation for genuine disability arising out of psychic injury. However, since screening of such claims is a difficult process, the courts recognize the burden that may be placed upon commerce and industry by allowing compensation for neurotic reaction to the ordinary everyday stresses that are found in most areas of employment. Indeed, it is a rare situation in which some adverse interpersonal relations among employees are not encountered from time to time. Employers and managers must admonish their subordinates and correct perceived shortcomings. The stress of competitive enterprise is ever present and attendant upon all types of commercial and industrial activity.

"Great care must be taken in order to avoid the creation of voluntary 'retirement' programs that may be seized upon by an employee at an early age if he or she is willing or, indeed, even eager to give up active employment and assert a neurotic inability to continue." *Id.* at 1349.

Following our opinion in *Seitz*, the General Assembly enacted G.L. 1956 (1986 Reenactment) § 28–34–2(36), which defined mental injury as compensable if "caused by emotional stress resulting from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees encounter daily without serious mental injury." This statutory provision in essence codified the doctrine of *Seitz*.

In the case at bar the petitioner encountered at most a minor indignity. We conclude that the trial commissioner was correct in rejecting the claim for inability to work, relying on the episode as described in the employee's own testimony. The Appellate Commission erred as a matter of law in determining that the stress encountered as a result of this episode was of such dramatic magnitude as to justify a claimed inability to work at the employee's former activity.

For the reasons stated, NULCO's petition for certiorari is hereby granted. The final decree of the Appellate Commission is hereby quashed. The papers in the case may be remanded to the Appellate Division of the Workers' Compensation Court [1] with

---

1. At the time this case was tried, the Workers' Compensation Commission was still in exist-

directions to enter a new decree in accordance with this opinion.

ence. While the case was pending on appeal, the Workers' Compensation Commission was reorganized as a court. The Appellate Commission became the Appellate Division. In our mandate we refer to the tribunal as it is now legally constituted.