The STATE of Delaware, Employer–
Below, Appellant,

v.

Aubrey CEPHAS, Employee–
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 14, 1993.
Decided: Jan. 20, 1994.

B. Wilson Redfearn (argued), and Bernadette M. Plaza, of Tybout, Redfearn & Pell, Wilmington, for appellant.

Philip E. Herrmann (argued), of Ament Lynch & Carr, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ., constituting the Court en banc.

VEASEY, Chief Justice:

In this appeal, we address for the first time whether a mental disorder substantially caused by the gradual and cumulative stress of employment is compensable under the Delaware Workmen's Compensation Act, 19 *Del.C.* § 2301 *et seq.* (the "Act"). The State appeals from the decision of the Superior Court affirming the conclusions of the Industrial Accident Board ("IAB"), which awarded benefits to appellee Aubrey Cephas ("Cephas" or "the claimant") to compensate him for the disabling effects of severe headaches and other symptoms, both physical and mental, resulting from the stress of his employment.

We hold that a mental injury is compensable even if (1) there was no prior physical trauma, (2) the injury was the result of gradual stimuli rather than a sudden shock, and (3) the job-related stress causing the injury was not unusual. Nevertheless, an employee seeking compensation for a mental injury must establish by objective proof that his or her working conditions were stressful and were a substantial cause of the disabling injury. Because the circumstances of this case satisfy these standards, we AFFIRM the decision of the Superior Court upholding the findings and conclusions of the IAB.

## I. FACTS

Cephas has been employed by the Delaware Correctional Center ("DCC") as a staff lieutenant since 1977. His primary duty at DCC was to handle the classifications and grievances for approximately 375 inmates. As a result, he was responsible for an average of 30 complaints per week and for determining the movement of inmates into different security units. Cephas also made parole recommendations and had the responsibilities of a duty officer who supervised 30 to 60 correctional officers on any given shift. He testified that although the duty officers rotated, he usually had to cover for missing duty officers because he was single and the other officers had families.

In 1989 the responsibilities assigned to Cephas increased when he assumed the duties of another staff lieutenant at the prison. The additional responsibility increased his caseload from 375 inmates to approximately 1100 inmates and resulted in 16 hours of overtime per week. Major Barry Hawlk of the DCC testified that a staff lieutenant is normally responsible for only 375 inmates, but that covering for other staff lieutenants was not out of the ordinary and would result in increased duties such as those experienced by Cephas.

Shortly after the increase in his responsibilities, Cephas began to experience severe headaches, flashes of light in his eyes, black-

outs, nausea, vomiting, and hives.[1] He attributes these symptoms, in part, to the tension he was under because of his increased workload.[2] Cephas testified that the headaches would be milder and the other symptoms would subside when he was at home. Despite the symptoms, Cephas did not seek medical attention until after an incident that occurred on February 9, 1990. On that day, Cephas experienced severe pain in his right side while driving home from the prison and eventually blacked out. He ultimately lost control of his vehicle and veered approximately 25 feet off the road into a marsh. Following the accident, Cephas consulted his family physician who performed a CAT scan of his brain. The test appears to have been inconclusive because Cephas was referred to Dr. Robert J. Varipapa ("Varipapa"), a neurologist, for an MRI scan.

Varipapa first examined Cephas on April 6, 1990. The doctor conducted an MRI scan, a neurological exam, and a vascular study. The MRI scan revealed that Cephas had several blood vessels that curve more than usual. No abnormalities were discovered by the vascular study. These and other observations led Varipapa to conclude initially that Cephas was suffering from chronic headaches of unknown etiology. Varipapa next examined Cephas on April 17, 1990. During the second examination, Cephas informed the neurologist that his headaches occurred at work. On the basis of these office visits, Varipapa concluded that his headaches were substantially related to his stress at work.

Cephas next contacted Varipapa on May 4, 1990, because Cephas was unable to go to work due to his headaches. Varipapa gave Cephas a letter suggesting that he take time off from work (specifically July 1 until July 30, 1990). Varipapa did not see Cephas again until July 3, 1990. Cephas complained of cloudy and out-of-focus vision, but stated that his headaches were better. Cephas also informed Varipapa that the leave he had prescribed had been denied by the employer.

Varipapa ultimately diagnosed his condition as classic migraine headaches and referred him to an ophthalmologist. At the IAB hearing, Varipapa testified that such headaches can be brought on by stress, and that stress from work was a substantial cause of the claimant's condition. Varipapa could not state with "reasonable medical probability" that the stress experienced by Cephas disabled him from working between July 1 and August 15, 1990.

Cephas filed with the IAB a Petition to Determine Compensation Due. Cephas alleged that the cumulative detrimental effect of stress from his employment rendered him unable to work from July 1 to August 15, 1990. Following a hearing, the IAB concluded that Cephas could not work from July 1 to August 15, 1990, because of his severe headaches, flashes of light in his eyes, blackouts, and hives, and that these symptoms were substantially caused by work-related stress. Cephas was awarded medical expenses and total disability benefits for that six-week period.

The Superior Court issued an opinion and order affirming the IAB's decision. This is an appeal by the State from the Superior Court's order. The State seeks a reversal of the decision of the Superior Court on the ground that the IAB's decision is not supported by substantial evidence. The State also contends that this Court should establish the principle that mental injuries should not be compensated unless they are caused by abnormal working conditions or working conditions which would have affected an average worker. In our view, the State's contention is not consistent with the language of the Act, and we affirm the order of the Superior Court.

## II. SCOPE AND STANDARD OF REVIEW

■ In reviewing the legal standards used by the Superior Court, this Court must de-

1. Cephas suffered from hypertension when he began working for the Department of Corrections in 1977. He has also suffered from hives since 1983. The hives, however, did not become a serious problem until after Cephas experienced increased stress at work.

2. Cephas also contends that his condition was aggravated by the fact that he had to continue working with a female co-worker with whom he had just ended a romantic relationship.

termine whether the lower court erred as a matter of law in formulating or applying legal precepts. Such questions of law are reviewed *de novo*. *Grand Ventures, Inc. v. Whaley*, Del.Supr., 632 A.2d 63, 66 (1993). In order to decide the issues raised on appeal, we must interpret the Act. "In the construction of a statute, this Court has established as its standard the search for legislative intent. Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls." *Spielberg v. State*, Del.Supr., 558 A.2d 291, 293 (1989) (citation omitted).

■■ With respect to the conclusions of the IAB, the standard and scope of review on appeal "is to determine whether or not there is substantial evidence to support the findings of the [Industrial Accident] Board." *DiSabatino Bros., Inc. v. Wortman*, Del. Supr., 453 A.2d 102, 105 (1982). *See also* 29 *Del.C.* § 10142(d). "Substantial evidence has been defined to mean, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Olney v. Cooch*, Del.Supr., 425 A.2d 610, 614 (1981) (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). This Court "will not substitute its judgment for that of an administrative body where there is substantial evidence to support the decision and subordinate findings of the agency." *Olney*, 425 A.2d at 613. Moreover, we must take "due account of the experience and specialized competence" of the IAB and the purposes of the Act. 29 *Del.C.* § 10142(d).

### III. COVERAGE OF MENTAL INJURIES UNDER THE ACT

The central issues raised in this case are (1) whether mental injuries that are not caused by physical trauma are compensable under the Act, and (2) what standards should be applied in such cases. This Court has previously recognized the compensability of psychological and neurological disorders when they are the result of an industrial accident. *E.g., Rice's Bakery v. Adkins*, Del. Supr., 269 A.2d 215, 216–17 (1970) ("The law seems settled that, provided a sufficient causal connection is proved by competent evi-

dence between an industrial accident and a resulting psychological or neurotic disorder resulting therefrom, such disability is compensable under Workmen's Compensation Law."). Nevertheless, this Court has not previously addressed the issue of whether a mental injury is compensable when it is not preceded by a physical injury in the workplace.

We begin our analysis of these questions by considering the purposes and language of the Act. This Court has recognized on numerous occasions that the two primary purposes of the statute are "to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of civil litigation." *Kofron v. Amoco Chem. Corp.*, Del.Supr., 441 A.2d 226, 231 (1982). *See also Frank C. Sparks Co. v. Huber Baking Co.*, Del.Supr., 96 A.2d 456, 461 (1953) ("The philosophy of the Workmen's Compensation Law is to give an injured employee, irrespective of the merits of his cause of action, a prompt and sure means of receiving compensation and medical care without subjecting himself to the hazards and delays of a law suit."). Consistent with these goals, 19 *Del.C.* § 2304 provides:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation **for personal injury or death by accident arising out of and in the course of employment,** regardless of the question of negligence and to the exclusion of all other rights and remedies.

*Id.* (emphasis added). The decisions of this Court have explained that the "by accident" requirement focuses on an unintended cause or result, rather than a specific incident or unusual event. *Duvall v. Charles Connell Roofing*, Del.Supr., 564 A.2d 1132, 1134–36 (1989). As a result, "an injury is compensable if the ordinary stress and strain of employment is a substantial cause of the injury." *Id.* at 1136.

The more difficult question of statutory interpretation is determining whether a mental disorder can be considered an "injury" under the Act. The definition of "injury" is

set forth in 19 *Del.C.* § 2301(12), which provides: " 'Injury' and 'personal injury' mean **violence to the physical structure of the body**, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment." *Id.* (emphasis added). The central issue, therefore, is whether "violence to the physical structure of the body" encompasses psychological injuries. Although this question has not been considered by this Court, it has been considered by the Superior Court of this State and by courts in other states.

In *Battista v. Chrysler Corp.*, Del.Super., 517 A.2d 295 (1986), *appeal dismissed*, Del. Supr., 515 A.2d 397 (1986), the Superior Court considered whether psychological injuries came within the statutory definition in 19 *Del.C.* § 2301(12). Battista, an employee of Chrysler Corp. ("Chrysler"), was hospitalized for shortness of breath and chest pains after being demoted several times and subjected to ethnic slurs and verbal abuse from at least one co-worker over a three-year period. *Id.* at 296. He was diagnosed as having a panic disorder with a secondary depression. Battista never returned to work and filed a petition for workers' compensation with the IAB. The IAB denied his petition, holding that "without physical violence to the structure of the body a psychological injury is not compensable." *Id.* at 297. Battista appealed the IAB's decision to the Superior Court.

In determining the compensability of psychological illnesses under the Act, the Superior Court considered the statutory definition of the terms "injury" and "personal injury." *Id.* After carefully analyzing the definition in 19 *Del.C.* § 2301(12) and reviewing certain non-Delaware authorities, the Superior Court held that "psychological illnesses can be compensable under the Act **even if not preceded by physical trauma.**" *Id.* (emphasis added).[3]

A number of decisions of courts from other jurisdictions have reached a similar conclusion. Nearly 40 years ago, the Texas Supreme Court in *Bailey v. American Gen. Ins. Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955), held that the phrase "damage or harm to the physical structure of the body" in the Texas Workmen's Compensation statute[4] included mental injuries not preceded by a physical trauma:

> The phrase "physical structure of the body", as it is used in the statute, must refer to the **entire** body, not simply to the skeletal structure or to the circulatory system or to the digestive system. It refers to the **whole**, to the complex of perfectly integrated and interdependent bones, tissues and organs which function together by means of electrical, chemical and mechanical processes in a living, breathing, functioning individual. To determine what is meant by "physical structure of the body", the structure should be considered that of a living person—not as a static, inanimate thing.

*Bailey*, 279 S.W.2d at 318 (emphasis in original). *See also Sparks v. Tulane Medical Ctr. Hosp. & Clinic*, La.Supr., 546 So.2d 138 (1989) (holding that a mental disorder can constitute "violence to the physical structure of the body").

Professor Larson, a leading scholar on workers' compensation, has praised the reasoning of the *Bailey* decision. 2B Arthur Larson, *Larson's Workmen's Compensation Law* § 42.23(a), at 7–905–6 (1993) (hereinafter "Larson"). Larson observed over 20 years ago that "the strength of the trend toward coverage suggests that the time is perhaps not too far off when compensation law generally will cease to set an artificial and medically unjustifiable gulf between the

---

3. Chrysler appealed the *Battista* decision to this Court, but its appeal was dismissed because the decision was interlocutory and Chrysler failed to comply with the procedural requirements of Supreme Court Rule 42. *Chrysler Corp. v. Battista*, Del.Supr., 515 A.2d 397 (1986).

4. Section 1, Article 8309, Subsection 5 of the Texas Workmen's Compensation law defined the terms "injury" and "personal injury" as meaning "damage or harm to the **physical structure of the body** and such diseases or infection as naturally result therefrom." *Bailey*, 279 S.W.2d at 318 (emphasis added).

'physical' and the 'nervous.'" Arthur Larson, *Mental and Nervous Injury in Workmen's Compensation*, 23 Vand.L.Rev. 1243, 1260 (1970). In fact, Professor Larson's prediction has proven to be accurate as a growing number of states have elected to compensate mental injuries without requiring physical trauma. *See* Marc A. Antonetti, *Workers' Compensation Statutes and the Recovery of Emotional Distress Damages in the Absence of Physical Injury*, 1990 Ann.Surv.Am.L. 671, 695 (1992) ("[T]he trend in the law has been towards granting awards for mental injury resulting from mental stress.").

■■■ A broad construction of the phrase "physical structure of the body" is appropriate in light of the nature of the Act. We have observed that the Act is a remedial statute with a benevolent purpose. *Delaware Tire Ctr. v. Fox*, Del.Supr., 411 A.2d 606, 607 (1980). It is the settled law of this State that the Act should be liberally construed to effectuate its purpose. *Id.; Mosley v. Bank of Delaware*, Del.Supr., 372 A.2d 178, 179 (1977). The realistic construction of the phrase "physical structure of the body," as was used by the Texas Supreme Court in *Bailey*, best effectuates this remedial purpose.

After consideration of the relevant authorities, we conclude that a disabling work-related mental disorder, whether or not preceded by a physical injury, is compensable under the Act. The nature of a mental injury does not make it less deserving of coverage. An impairment of a worker's mental faculties can be just as disabling as a physical injury. Although the cause and existence of a mental infirmity may be more difficult to establish than its physical counterpart, a clearly proven mental injury should be accorded equal treatment under the Act.

Our conclusion is consistent with recent decisions of this Court. In *Reese v. Home Budget Ctr.*, Del.Supr., 619 A.2d 907 (1992),

we reaffirmed the compensability of psychological consequences resulting from a prior work-related accident. *See also Rice's Bakery*, 269 A.2d 215. The existence of a specific physical accident, however, is not a prerequisite to recovery. *Duvall*, 564 A.2d at 1136. As long as "the ordinary stress and strain of employment is a substantial cause of the injury," compensation under the Act is available. *Id.* Because job-related stress can cause mental as well as physical injuries, it is appropriate to compensate all such injuries equally.

## IV. THE STANDARDS FOR DEMONSTRATING ENTITLEMENT TO COMPENSATION FOR MENTAL INJURIES UNRELATED TO PHYSICAL TRAUMA

Our decision is premised on the principle that all injuries, whether mental or physical, should be compensable when the necessary prerequisites to coverage are established by a claimant. Nevertheless, we recognize that determining the cause of a mental injury can be far more complex than diagnosing the cause of a physical injury. A person's psychological well-being will normally be affected by circumstances unrelated to work, such as his or her family life, background, social relationships, temperament, abuse of drugs or alcohol, and so forth. While it may be easy to link repeated strenuous work-related activity to a physical injury, it will often be more difficult to show that job-related stress, as distinct from non-work pressures, was a substantial cause of a mental disorder. Therefore, appropriate standards must be applied to prevent mental problems resulting from non-work causes from being compensated under the Act.

Courts and legislatures outside of Delaware have adopted a variety of different standards for determining the compensability of work-related mental disorders. Ten states (Alabama,[5] Florida,[6] Georgia,[7] Kan-

---

**5.** *Rodgers v. Bruno's, Inc.*, Ala.Civ.App., 554 So.2d 1034 (1989).

**6.** *Lil Champ Food Stores, Inc. v. Powers*, Fla.Dist. Ct.App., 569 So.2d 464 (1990).

**7.** *W.W. Fowler Oil Co. v. Hamby*, 192 Ga.App. 422, 385 S.E.2d 106 (1989).

sas,[8] Minnesota,[9] Montana,[10] Nebraska,[11] Ohio,[12] Oklahoma,[13] and South Dakota [14] ) require that a physical injury be present and thereby deny compensation for mental injuries caused solely by stress. Six states (Illinois,[15] Louisiana,[16] New Mexico,[17] Tennessee,[18] Texas,[19] and Virginia [20] ) require that the mental injury be the result of a specific incident or event, such as a sudden shock, and therefore deny compensation where the sustained stress and strain of employment is responsible. Of those states that permit recovery where the mental injury is caused by gradual stimuli, thirteen states (Alaska,[21] Arkansas,[22] Arizona,[23] Colorado,[24] Maine,[25] Mississippi,[26] Missouri,[27] Pennsylvania,[28] Rhode Island,[29] South Carolina,[30] Washington,[31] West Virginia,[32] and Wisconsin [33] ) limit compensation to cases where the day-to-day stress responsible for the mental disorder is significantly greater than that normally experienced by employees. Such states often require the stress to be "extraordinary" or "unusual" when compared to the pressures faced by other workers generally or similarly situated workers. Finally, eight states (California,[34] Hawaii,[35] Indiana,[36] Massachusetts,[37]

8. *Love v. McDonald's Restaurant*, 13 Kan.App.2d 397, 771 P.2d 557 (1989).

9. *Johnson v. Paul's Auto & Truck Sales, Inc.*, Minn.Supr., 409 N.W.2d 506 (1987).

10. Mont.Code Ann. § 39-71-119(3) (1993) (constitutionality upheld in *Stratemeyer v. Lincoln County*, Mont.Supr., 855 P.2d 506 (1993), *cert. denied*, — U.S. —, 114 S.Ct. 600, 126 L.Ed.2d 566 (1993)).

11. *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985).

12. *Rambaldo v. Accurate Die Casting*, 65 Ohio St.3d 281, 603 N.E.2d 975 (1992).

13. *Fenwick v. Oklahoma State Penitentiary*, Okla. Supr., 792 P.2d 60 (1990).

14. *Lather v. Huron College*, S.D.Supr., 413 N.W.2d 369 (1987).

15. *General Motors Parts Div. v. Indus. Comm'n*, 168 Ill.App.3d 678, 119 Ill.Dec. 401, 522 N.E.2d 1260 (1988).

16. La.Rev.Stat.Ann. § 23:1021(7)(b) (West Supp. 1991).

17. *Jensen v. New Mexico State Police*, Ct.App., 109 N.M. 626, 788 P.2d 382 (1990), *cert. denied*, 109 N.M. 563, 787 P.2d 1246 (1990).

18. *Gatlin v. City of Knoxville*, Tenn.Supr., 822 S.W.2d 587 (1991).

19. *City of Garland v. Vasquez*, Tex.Ct.App., 734 S.W.2d 92 (1987).

20. *Teasley v. Montgomery Ward & Co.*, 14 Va. App. 45, 415 S.E.2d 596 (1992).

21. Alaska Stat. § 23.30.265(17) (1993).

22. *McClain v. Texaco, Inc.*, 29 Ark.App. 218, 780 S.W.2d 34 (1989).

23. *Ziv v. Indus. Comm'n*, Ariz.Ct.App., 160 Ariz. 330, 773 P.2d 228 (1989).

24. *City Market, Inc. v. Indus. Claim Appeals Office*, Colo.Ct.App., 800 P.2d 1335 (1990).

25. Me.Rev.Stat.Ann. tit. 39-A, § 201(3) (1993).

26. *Fought v. Stuart C. Irby Co.*, Miss.Supr., 523 So.2d 314 (1988).

27. *Frazier v. St. Mary's Honor Ctr.*, Mo.Ct.App., 852 S.W.2d 385 (1993) (citing 1992 amendment to Mo.Rev.Stat. § 287.120).

28. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

29. *Moreno v. NULCO Mfg. Corp.*, R.I.Supr., 591 A.2d 788 (1991).

30. *Powell v. Vulcan Materials Co.*, 299 S.C. 325, 384 S.E.2d 725 (1989).

31. *McClelland v. ITT Rayonier, Inc.*, 65 Wash. App. 386, 828 P.2d 1138 (1992).

32. *Breeden v. Workmen's Compensation Comm'r*, W.Va.Ct.App., 168 W.Va. 573, 285 S.E.2d 398 (1981).

33. *Swiss Colony v. Dep't of Indus., Labor and Human Relations*, 72 Wis.2d 46, 240 N.W.2d 128 (1976). A 1988 amendment to Wis.Stat.Ann. § 102.01(2)(c), however, may eliminate recovery in the absence of physical trauma.

34. Cal.Labor Code § 3208.3 (West Supp.1994).

35. *Royal State Nat'l Ins. Co. v. Labor and Indus. Relations App. Bd.*, 53 Haw. 32, 487 P.2d 278 (1971).

36. *Hansen v. Von Duprin, Inc.*, Ind.Supr., 507 N.E.2d 573 (1987).

37. Mass.Gen.L.Ann. ch. 152, § 1(7A) (West 1993).

Michigan,[38] New Jersey,[39] New York,[40] and Oregon[41]) compensate mental injuries caused gradually by the ordinary stress of employment.

In addition, two standards for establishing legal causation have developed in workers' compensation cases involving mental and nervous injuries: (1) the "subjective causal nexus" test and (2) the "objective causal nexus" test. The Michigan Supreme Court in 1978 described the "subjective causal nexus" test as follows:

> Under a strictly "subjective causal nexus" standard, a claimant is entitled to compensation if it is factually established that claimant honestly perceives some personal injury incurred during the ordinary work of his employment "caused" his disability. This standard applies where the plaintiff alleges a disability resulting from either a physical or mental stimulus and honestly, **even though mistakenly,** believes that he is disabled due to that work-related injury and therefore cannot resume his normal employment.
>
> . . . .
>
> ... The focal point of this standard is the plaintiff's own perception of reality.

*Deziel v. Difco Lab., Inc.,* 403 Mich. 1, 268 N.W.2d 1, 11 (1978) (emphasis supplied). It is significant that the "subjective causal nexus" test was repudiated by the Michigan legislature only four years after its adoption by that state's supreme court.[42] Many other states have similarly rejected the doctrine. Larson, § 42.23(d).

■ The vast majority of jurisdictions, therefore, have opted for an "objective causal nexus" test, but the precise formulation of this test varies from state to state. The fact that there are varying formulations is not surprising in light of the diversity in the standards used to analyze mental injury cases. *See supra,* pp. 25–27; Larson, § 42.-25. A representative description of the objective causal nexus test is "whether the stress [of employment], admittedly subjective, stemmed from objectively proven stressful work conditions, rather than conditions which only the petitioner found stressful (or, perhaps, conditions which were not shown objectively to exist at all)." *Goyden v. State,* Ct.App.Div., 256 N.J.Super. 438, 607 A.2d 651, 655 (1991) (per curiam), *aff'd,* 128 N.J. 54, 607 A.2d 622 (1992). *See also Williams v. Western Electric Co.,* Ct.App.Div., 178 N.J.Super. 571, 429 A.2d 1063, 1070–1071 (1981) (holding that "[t]here must be objective evidence which, when viewed realistically, carries petitioner's burden of proof to demonstrate that the alleged work exposure was to a material degree a contributing factor").

It is our opinion that an objective causal nexus test should be applied in Delaware. Such a test is consistent with the remedial purposes of the Act because it permits consideration of both subjective and objective evidence in arriving at an equitable and informed decision.

■ Consistent with the standards enunciated in *Duvall* and *Reese,* we hold that, in order to be compensated for a mental injury in the absence of a specific and identifiable industrial accident (i.e., a mental injury which is gradually caused by stress), a claimant must offer evidence demonstrating objectively that his or her work conditions were actually stressful and that such conditions were a substantial cause of claimant's mental disorder. *Duvall,* 564 A.2d at 1136; *Reese,* 619 A.2d at 911. The stress causing the injury need not be unusual or extraordinary, but it must be real and proved by objective

---

38. *Lombardi v. William Beaumont Hosp.,* Mich. Ct.App., 502 N.W.2d 736 (1993).

39. *Goyden v. State,* 128 N.J. 54, 607 A.2d 622 (1992).

40. *Wolfe v. Sibley, Lindsay & Curr Co.,* N.Y.Ct. App., 36 N.Y.2d 505, 369 N.Y.S.2d 637, 330 N.E.2d 603 (1975).

41. *State Accident Ins. Fund Corp. v. Anderson,* 94 Or.App. 11, 764 P.2d 924 (1988), *review denied,* 307 Or. 571, 771 P.2d 1021 (1989).

42. The Michigan legislature enacted an amendment stating that "mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof." Mich.Stat.Ann. § 17.237(401)(2)(b)[418.-401(2)(b)] (Callaghan 1988); Larson, § 42.23(d).

evidence. Where a claimant merely imagines or subjectively concludes that his or her work conditions have caused a psychological illness, there is no basis for holding the employer responsible since the connection between work and injury is perceived only by the impaired worker.[43]

The State expresses concern regarding the potential for a significant increase in questionable claims if workers' compensation is provided for mental injuries allegedly caused by job-related stress. Although the State's concern is not unfounded,[44] there are a number of safeguards to prevent abuse. First, a claimant must establish that he or she has an actual disabling mental injury. Simply being tired or overworked is obviously insufficient to justify workers' compensation benefits. Second, the adversarial nature of the proceedings before the IAB permits the employer to test the legitimacy of the employee's claim. *See Beattie v. Beattie,* Del.Supr., 630 A.2d 1096, 1099 (1993) (similar concerns arising out of abolition of interspousal immunity are unfounded, in part because "the judicial system is adept at ferreting out frivolous and unfounded cases"); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, —, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993) (adversary system, including vigorous cross-examination,

provides appropriate safeguards for testing the validity of new or controversial types of scientific evidence). Third, the experience and common sense of the IAB must be relied upon, as in many physical injury cases, to deny compensation where it is not deserved and not proven, and to award it where it is deserved and proven. Fourth, our adoption of an objective causal nexus test will require a claimant to prove both the existence of stressful working conditions and the connection between those conditions and the claimant's mental disorder.

The final safeguard against excessive numbers of dubious mental injury awards is the General Assembly. It is the General Assembly and not this Court which has the prerogative to legislate. This Court's role is to construe existing legislation. The Act presently in force does not distinguish between physical and mental injuries. If the General Assembly should deem it advisable in the future, it can amend the Act to provide more stringent standards.[45]

The absence of any differentiation between mental and physical injuries in the Act precludes this Court from unilaterally imposing more burdensome requirements on those seeking recovery for mental injuries than the Act provides. To do so would border on judicial legislation. *Nixon v. Blackwell,* Del.

43. *It should be recognized that the objective causal nexus test we adopt does not require proof that a **reasonable or average person** would have been affected by the job-related stress. Instead, the test focuses on the objectively provable impact of actual stress on the **particular** claimant, regardless of whether the claimant is more or less susceptible to mental disorders than the reasonable or average person.*

44. Larson notes California's substantial increase in "stress" claims following that state's acceptance of "the rule that a gradual *stress* injury claim may be compensable even if not unusual." Larson, § 42.25(a).

45. Some states have enacted amendments so providing. For example, Arizona's worker's compensation statute provides that "[a] mental injury, illness or condition ... is not compensable ... unless some unexpected, unusual or extraordinary stress related to the employment ... was a substantial contributing cause of the mental injury, illness or condition." Ariz.Rev.Stat. Ann. § 23–1043.01(B) (1993). *See also* Alaska Stat. § 23.30.265(17) (1993) (limiting compensation for mental injuries caused by stress to cases

in which "(A) the work stress was extraordinary and unusual in comparison to pressures and tensions experienced by individuals in a comparable work environment, and (B) the work stress was the predominant cause of the mental injury"), Cal.Labor Code § 3208.3(b) (West Supp. 1994) (requiring that actual events of employment be the "predominant" cause of the psychiatric injury), Mass.Gen.L.Ann. ch. 152, § 1(7A) (West 1993) (requiring that events within the employment be "the predominant contributing cause" of the mental disability and excluding a "bona fide personnel action," such as a transfer or demotion, unless emotional harm was intentionally inflicted), and Me.Rev.Stat.Ann. tit. 39–A, § 201(3) (1993) (containing similar requirements as Alaska's statute and excluding "disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action" as valid causes). The fact that the Delaware General Assembly could have adopted such express exclusions regarding mental injuries, but chose not to do so, lends further credence to our interpretation of the Act.

Supr., 626 A.2d 1366, 1380–81 (1993). Accordingly, we hold that the substantial cause standard in *Duvall* applies in mental injury cases resulting from gradual stress so long as the objective test set forth herein for proving causation can be satisfied.

## V. THE APPLICATION OF THE APPROPRIATE STANDARD TO THE FACTS OF THIS CASE

■ We now consider whether the circumstances of this case satisfy the legal standards set forth above. The State attacks the IAB's findings by asserting that the psychological injury experienced by Cephas was primarily caused by two events unrelated to work: (1) the end of a romantic relationship with a female co-worker in February 1990, and (2) his automobile accident on February 9, 1990. The State also points to several passages in the testimony of Varipapa to show that his testimony was not a sufficient basis upon which the IAB could determine that the claimant's alleged injuries were substantially caused by his employment at DCC. First, Varipapa testified that although he knew Cephas was a guard at DCC, he was not certain of the claimant's duties. Second, the doctor stated on cross-examination that he had no psychological tests or detailed knowledge of the claimant's psychiatric state relating to his employment in Delaware. Third, Varipapa acknowledged that he could not state with "reasonable medical probability" that the stress experienced by Cephas was disabling.

Although this is a somewhat close case, we find that there is sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that the conditions under which Cephas was working were actually stressful and were a substantial cause of his mental disorder. *See Olney,* 425 A.2d at 614. First, his headaches began when his caseload was increased from 375 to 1100 inmates. A reasonable mind could conclude that such a drastic increase in responsibility and stress could cause some form of psychological injury. Second, his symptoms began to subside when he was away from his work environment. Third, a neurologist diagnosed Cephas as exhibiting the classic symptoms of migraine headaches. Fourth, a neurologist testified that such migraine headaches can be caused by job stress.

Although reasonable minds may differ on the impact of the claimant's personal life on his mental problems and the adequacy of Varipapa's medical conclusions, our standard of review requires deference to the findings of the IAB. 29 *Del.C.* § 10142(d). Cephas presented objective evidence that the significant increase in his caseload and the nature of his work created objectively stressful conditions. Dr. Varipapa's testimony supports the finding that this stress was a substantial cause of his migraine headaches. Therefore, there is sufficient evidence in the record to support the IAB's findings and satisfy the applicable legal standards.

### CONCLUSION

We therefore hold that mental injuries, even if not preceded by physical trauma, are compensable under the Act. The Superior Court properly upheld the IAB's determination that the stress from the claimant's employment at DCC was a substantial cause of his mental problems. The decision of the Superior Court upholding the findings and conclusions of the IAB is therefore **AFFIRMED.**